# WYMAN v. WALLACE.

APPEAL FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 191.   Submitted March 6, 1906.—Decided April 2, 1906.

Where a national bank has gone into liquidation under § 5220, Rev. Stat., and one holding its notes seeks to enforce the additional liability imposed by § 5151, Rev. Stat., against a stockholder by a suit in the nature of a creditor's bill on behalf of himself and all other creditors, a case is presented under the laws of the United States giving the Circuit Court jurisdiction independently of diverse citizenship, and the decree of the Circuit Court of Appeals is not final but an appeal therefrom will lie to this court.

It is not necessary in order to maintain such a suit that the creditor should first obtain judgment on the notes.

A national bank finding itself embarrassed though possessed of a large amount of assets apparently in excess of its obligations is not prohibited

by the national banking act from borrowing, and it has the power to borrow, money to meet pressing demands, which it has not the cash to meet, and to give its time obligations therefor, secured by all of its assets; and if it subsequently goes into liquidation, and the collateral is insufficient to meet the obligations, the stockholders, both assenting and non-assenting to the liquidation are subject to the additional liability to the extent imposed by § 5151, Rev. Stat., and the holder of the notes can enforce the same by creditor's bill.

PRIOR to December 21, 1895, the American National Bank and the Union National Bank, hereinafter called respectively the American Bank and the Union Bank, were each engaged in business in the city of Omaha, Nebraska. During that month the American Bank was in such financial condition that it became necessary for it to provide for the payment of a large amount of deposits on or about January 1, 1896, for though possessed of abundant nominal assets it did not have sufficient cash to make such payment. It knew that a neglect to pay would precipitate a run and bring on a failure of the bank. Thereupon in order to obtain the money necessary therefor its officers and leading stockholders entered into negotiations with the Union Bank for the payment of its immediate obligations and thus enabling it to secure an opportunity to realize upon its assets. As a result of such negotiations a contract was entered into by and between the two banks through their boards of directors. By its terms the Union Bank was to assume the payment of all the liabilities of the American Bank, receiving therefor cash and such bills receivable as it was willing to accept at par and without recourse. The difference between the amounts so received and the liabilities assumed was to be represented by three non-negotiable promissory notes of the American Bank, the payment of which was to be secured by a pledge of all its remaining assets to Thomas L. Kimball, as trustee. This contract was carried out. The Union Bank moved into and took possession of the offices of the American Bank. Upon adjustment, as above indicated, the difference was found to be $201,000, for which the American Bank executed to the Union Bank three non-negotiable promissory

notes, each being for $67,000, and payable in one, two and three years, respectively. In accordance with the contract the remaining assets of the American Bank were placed in the hands of the trustee, Thomas L. Kimball, who proceeded to collect them and apply the proceeds on the notes until his death during the pendency of this suit. Subsequently a successor was appointed, who continued in performance of the trust until the entry of the decree. The execution of the contract of December 21, 1895, by the president and cashier of the American Bank was directed by resolution of its board of directors. On January 14, 1896, at an annual meeting of the shareholders of that bank, at which was represented 1,665¾ shares out of a total of 2,000, a resolution was adopted instructing the directors to take action looking to the liquidation of the bank. On February 25, 1896, another meeting of the shareholders was held, at which 1,696 shares were represented, and a resolution for voluntary liquidation was adopted by an affirmative vote of 1,639¾ shares. The Union Bank fulfilled its obligations under the contract, having taken up all the liabilities assumed by it. The trustee meeting with little success in collection of the assets, this suit was, after the first note had matured, instituted in the Circuit Court of the United States for the District of Nebraska by Sumner Wallace, a citizen of New Hampshire, to whom the note had been transferred, against the Union Bank, Thomas L. Kimball the trustee, the American Bank and its stockholders, including the appellants. By an amended bill the complainant sought on behalf of himself and all other creditors of the American Bank the winding up of the affairs of that bank, the determination of the amount due upon his note, the ascertainment of all the creditors and the amounts of their claims, the subjection of the remaining assets to the payment of those claims and the enforcement of the liability of the stockholders. He had not reduced the note to judgment prior to the commencement of this suit. Upon a final hearing a decree was entered ascertaining the amounts due the complainant and the Union Bank

(they being the only creditors), after the application of all credits, the number of shares of stock held by each shareholder of the American Bank and directing a recovery of $97.23 on account of each share of stock. This decree was affirmed by the United States Circuit Court of Appeals for the Eighth Circuit, 68 C. C. A. 40; 135 Fed. Rep. 286, from whose decision an appeal was taken to this court.

*Mr. W. W. Morsman* and *Mr. Howard B. Smith* for appellants in this case and in Nos. 192 and 193, submitted simultaneously herewith.[1]

*Mr. Richard S. Horton* for appellant in No. 194, argued at time of submission hereof.[2]

*Mr. Richard S. Horton* and *Mr. Charles Battelle* for appellants in No. 195, submitted simultaneously herewith.[3]

The court did not have jurisdiction on the ground of citizenship, because complainant is the assignee of a non-negotiable chose in action and his assignor, the Union National Bank, is a bank located in Nebraska, while the American National Bank, Kimball, and these appellants, were also citizens of Nebraska. *Wilson* v. *Knox Co.,* 43 Fed. Rep. 481; *Parker* v. *Armsby,* 141 U. S. 81; *Mexican Nat. R. R. Co.* v. *Davidson,* 157 U. S. 201; *Cloud* v. *City of Sumas,* 32 Fed. Rep. 177.

The American National Bank did not go into voluntary liquidation within the meaning and purpose of the United States banking laws. The word "liquidation," used in said sec. 2 and in sec. 5220, Rev. Stat., has a definite meaning and presupposes the existence of assets to be liquidated in the manner provided. But there remained under the control of the American National Bank or of its directors nothing to liquidate. All the assets of the American had been turned

---

[1] No. 192, *Frenzer* v. *Wallace;* No. 193, *Morsman* v. *Wallace, post,* pp. 244, 245.

[2] No. 194, *Poppleton* v. *Wallace, post,* p. 245.

[3] No. 195, *McClellan* v. *Wallace, post,* p. 244.

over to the Union and Kimball, for them to collect and apply to the payment of the three notes, and they had proceeded to do this and were still engaged in the process of liquidation at the time the vote was taken.

The complainant has not filed "a bill in the nature of a creditor's bill," as positively required by said sec. 2; for neither of his bills alleges and his proof does not show, any action at law upon his note. But a creditor's bill presupposes two things: (1), that the creditor has been able to establish his claim to be a valid and honest claim before the proper court at law; and (2), that he needs the assistance of a court of equity in order to realize upon it. Jones v. Green, 1 Wall. 330; Smith v. Railroad Co., 99 U. S. 398; Scott v. Neely, 140 U. S. 106; Nat. Tube Works Co. v. Ballou, 140 U. S. 517; Hollins v. Brierfield C. & I. Co., 150 U. S. 371.

The American National Bank and its shareholders have been deprived of their right to have the validity of the note sued on determined in the proper court and before a jury. This right to a jury trial is preserved by the Seventh Amendment to the Constitution of the United States, and by sec. VI of Art. I of the constitution of Nebraska. Cates v. Allen, 149 U. S. 451; Scott v. Neely, 140 U. S. 106.

There are only two methods of liquidating a national bank, one by direction of the Comptroller and the other under § 5220, Rev. Stat., and the bringing of this action by a party not a judgment creditor conflicts with both of these methods.

The American National Bank was not obligated to make good any deficiency remaining after the exhaustion of its assets in the hands of the Union National Bank and Kimball, and hence appellants were not liable therefor as shareholders.

Cases in the Federal courts sustain the power of national banks to borrow money only where the moneys were loaned, borrowed and used by banks in good faith in the usual course of the business of banking; or if not actually so used the loaning banks had no knowledge of the diversion thereof and were not parties thereto. Those cases establish that the power to

borrow money is incidental and limited to occasions when borrowing is necessary to carry on the business of banking, and that all borrowing must be of a temporary nature. *First Nat. Bank* v. *Nat. Exch. Bank*, 92 U. S. 122; *Western Nat. Bank* v. *Armstrong*, 152 U. S. 346, 351; *U. S. Nat. Bank* v. *First Nat. Bank*, 27 U. S. App. 605; *Auten* v. *U. S. Nat. Bank*, 174 U. S. 125; *Stapleton* v. *Stockton*, 91 Fed. Rep. 326; *Ditty* v. *Dominion Nat. Bank*, 75 Fed. Rep. 769; *Aldrich* v. *Chemical Nat. Bank*, 176 U. S. 618.

In this case the nature of the transaction and its natural and inevitable results was not a simple borrowing of money but was one beyond the powers of the board of directors acting alone, and *ultra vires* the bank itself.

Directors have no power to perform acts not within the ordinary business of the corporation. *Chicago City Ry. Co.* v. *Allerton*, 18 Wall. 233.

If a national bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations, the Comptroller should have been notified and the shareholders of the bank would, under § 5205, have then been by him given the option either to continue the business of the bank by making good its capital stock, or to submit to liquidation under the supervision of the Comptroller. *Roberts* v. *Hill*, 24 Fed. Rep. 571.

If, on the other hand, a bank is insolvent only when it is unable to meet the demands actually made upon it, then the circumstances did not authorize the directors to take the action they did; and the condition of the American National Bank was well known to the officers of the Union National Bank.

Corporations, including national banks, have such powers and such powers only as are expressly or impliedly conferred upon them, and any act which is not within the powers so conferred is impliedly prohibited. *Germania &c. Co.* v. *Boynton*, 71 Fed. Rep. 797, 801; *Central Trans. Co.* v. *P. P. C. Co.*, 139 U. S. 24; *Cal. Nat. Bank* v. *Kennedy*, 167 U. S. 362, 366.

The power to enter into this transaction, if existing, must be an incidental power, as it is not expressly conferred. The incidental powers of national banks are defined and limited in and by § 5136, Rev. Stat., and do not authorize a transaction such as the one between the banks. The power to enter into such a transaction is impliedly denied by the general trend of the laws governing national banks and the object such laws have in view.

The power to enter into such a transaction is impliedly prohibited by Rev. Stat. §§ 5133, 5137, 5145, 5146, 5147, 5153, 5202, 5222, 5230, 5497 and expressly prohibited by § 5242.

National banks are public corporations and the banking laws governing them are complete in themselves, provide expressly when and by whom a bank shall be liquidated, and exclude all other methods. *National Bank* v. *United States*, 107 U. S. 445; *In re Mfrs. Nat. Bank*, 5 Biss. 499; *First Nat. Bank* v. *Colby*, 21 Wall. 609; *Hunt* v. *American &c. Co.*, 81 Fed. Rep. 532; *Bank Commissioners* v. *The Bank of Brest*, 1 Harr. Ch. (Mich.) 106, 111, 112.

The fact that a contract had been executed by one party of which the other party has received the benefit, does not give the contract validity, and no action will lie on the contract, and stockholders of a bank may show the nature of the transaction, *i. e.*, that it was not such as to impose any liability upon them. *Pearce* v. *Madison R. R.*, 21 How. 441; *Central Trans. Co.* v. *P. P. C. Co.*, 139 U. S. 24; *Louisville &c.* v. *Louisville &c.*, 174 U. S. 552, 567; *O'Brien* v. *Whelock*, 184 U. S. 450, 490; *Whitman* v. *Nat. Bank*, 176 U. S. 559; *Ward* v. *Joslin*, 186 U. S. 142.

The liability of shareholders in national banks is a restricted liability and the transaction between the banks was of such a nature that appellants are not liable for any deficit arising therefrom. Sec. 5151, Rev. Stat., is the only provision imposing liability upon shareholders of national banks; and the cases show: that the liability imposed by § 5151 is a means of securing the payment of a bank's debts at the time when

it is no longer able to continue business; that the purpose of the section is to secure the effectual winding up of the bank's affairs; that such liability cannot be prolonged; and that there can be no liability on the part of shareholders unless the contracts, debts and engagements of the bank have been contracted duly, and in the ordinary course of the business of banking. They further show that the fact, that the new obligation takes the place of an old obligation for which the shareholders may have been liable, does not make them liable for such new obligation. *Richmond* v. *Irons*, 121 U. S. 27; *Schrader* v. *Mfrs. Nat. Bank*, 133 U. S. 67; *Ward* v. *Joslin*, 186 U. S. 142, 152.

The "business of banking" is defined in *Mercantile Bank* v. *New York*, 121 U. S. 138 (1887), and the transaction between the two banks does not fall under that definition.

The debt represented by the note sued on was not duly contracted because the transaction was *ultra vires* not only the board of directors but the bank itself, and because the debt was not incurred in the ordinary course of the business of banking, and because the transaction was such as to increase and prolong the liability of the shareholders as it existed on December 21, 23, 1895.

Such a transaction and the debt arising therefrom cannot be said to have been within the "legal contemplation" of the shareholders of the American National Bank at the time they purchased the shares held by them.

Appellants have not done anything to estop them to deny their liability to make good the balance remaining unpaid upon the notes.

Assuming that a contract *ultra vires* a corporation can be rendered enforceable against its shareholders by the principle of estoppel, the doctrines of estoppel can be applied only to persons individually, not *en masse*. No official action was taken by the shareholders in meeting assembled and none of these appellants did or failed to do anything from which ratification could be implied. Their silence could not affect their

rights, as the duty to speak was not imposed on them. There was no express ratification such as could give validity to the original transaction. *Scovill* v. *Thayer*, 105 U. S. 143; *Thomas* v. *West Jersey R. R. Co.*, 101 U. S. 71; *Bloomfield* v. *Charter Oak Nat. Bank*, 121 U. S. 121, 135; *Mutual Life Ins. Co.* v. *Mowry*, 96 U. S. 544, 547.

But a contract *ultra vires* a corporation cannot be rendered enforceable against its shareholders by ratification or by estoppel. *Central Trans. Co.* v. *P. P. C. Co.*, 139 U. S. 24; *Cal. Nat. Bank* v. *Kennedy*, 167 U. S. 362; *First Nat. Bank* v. *Conrad*, 174 U. S. 364, 372; *Ward* v. *Joslin*, 186 U. S. 142, 151.

To hold that the notes represented contracts, debts and engagements of the American for which its shareholders were liable and that for that reason the Union should recover against appellants, would be to overrule in effect the cases cited last above. Such a conclusion is not based upon any averment in the bill or the amended bill; is opposed to *Richmond* v. *Irons*, *Schrader* v. *Mfrs. Nat. Bank* and *Ward* v. *Joslin*, *supra*, and would deprive the shareholders of their right to contest their liability for such claims.

The transaction was an entirely new deal and the Union National Bank was under no prior obligation to pay the debts of the American National and was a volunteer. *Ætna Life Ins. Co.* v. *Middleport*, 124 U. S. 548.

*Mr. James M. Woolworth* and *Mr. R. S. Hall* for appellees in this case and in Nos. 192, 193, 194 and 195, submitted:

The jurisdiction of the Circuit Court did not depend upon citizenship but on sec. 2 of the act of June 30, 1876, which has never been repealed. *King* v. *Pomeroy*, 121 Fed. Rep. 287; *Williamson* v. *American Bank*, 115 Fed. Rep. 793.

A suit arises under the Constitution and laws of the United States whenever its correct decision depends upon the construction of either. *Cohens* v. *Virginia*, 6 Wheat. 262; *Tennessee* v. *Davis*, 100 U. S. 258; *Starin* v. *New York*, 115 U. S. 249; *Union National Bank* v. *Miller*, 15 Fed. Rep. 703.

A contract by a national bank to assume and pay the liabilities of another bank in consideration of the transfer to it by the other bank of its office furniture and its cash and cash assets, and the further assignment to a trustee for its benefit of bills receivable and securities is not *ultra vires* but is within its power conferred by statute to conduct a general banking business. *Schofield* v. *State National Bank,* 97 Fed. Rep. 282.

The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. *Railway Co.* v. *McCarthy,* 96 U. S. 258; *Benseik* v. *Thomas,* 66 Fed. Rep. 104; *American National Bank* v. *National Wall Paper Company,* 77 Fed. Rep. 85; *Aldrich* v. *Chemical National Bank,* 176 U. S. 611. See also *Western National Bank* v. *Armstrong,* 152 U. S. 346; *Ditty* v. *Dominion National Bank,* 22 C. C. A. 376; *S. C.,* 75 Fed. Rep. 769.

If the directors of the American National Bank possessed the authority to protect its depositors and to borrow money to discharge the obligations as held in the case of *Schofield* v. *State National Bank,* 97 Fed. Rep. 282, then the stockholders, of course, will be liable and if the American is liable upon the theory of money had and received to its use and benefit, then the stockholders are liable also.

The bank is clearly liable for money had and received even assuming that the directors did not act in due form. *Cary* v. *Curtis,* 3 How. 236; *Kennedy* v. *Baltimore Ins. Co.,* 3 H. & J. 367. Assumpsit will lie whenever the defendant received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. *Byrne et al.* v. *United States,* 93 U. S. 642, 643. And the form of the indebtedness or the mode in which it was incurred, is immaterial, and the obligations arising in this manner are binding even on the United States. *United States* v. *State Bank,* 96 U. S. 30.

There is no statutory authority for the borrowing of money. The courts, however, hold that it can do so. *State* v. *First*

*Nat. Bank of Orleans*, 88 Fed. Rep. 947; *First Nat. Bank* v. *Exchange Nat. Bank*, 92 U. S. 127; *Western Nat. Bank* v. *Armstrong*, 152 U. S. 347; *Armstrong* v. *Chemical Nat. Bank*, 83 Fed. Rep. 565.

The transaction was a loan and not a sale.

If the language in this contract is at all ambiguous, the way in which the parties understood it and acted upon it will be of aid to the court.

The practical interpretation given to it by the parties themselves, when engaged in the performance of the agreement, and before any controver y has arisen concerning it, is one of the best indications of its true intent. *Schofield* v. *State National Bank*, 97 Fed. Rep. 285. Also *Topliff* v. *Topliff*, 122 U. S. 121; *Chicago* v. *Sheldon*, 9 Wall. 50, 54.

The Federal court on the equity side has jurisdiction to sustain a bill brought by a general creditor under the statute.

The statute plainly says "any creditor." Without this statute the judgment creditor or lien holder might maintain his bill in equity. This statute did not take away any equitable rights. But because to exhaust the remedy at law, in cases like these of national banks, would practically destroy the benefit to the creditor, this statute was passed giving to "any creditor" the right to file a bill in the nature of a creditor's bill, thus affording a speedy and efficient remedy to a creditor. *Darrigh* v. *H. Wetter Mfg. Co.*, 78 Fed. Rep. 7; *Nat. Security Co.* v. *State Bank*, 120 Fed. Rep. 593; *Jones* v. *Mutual Fidelity Co.*, 123 Fed. Rep. 508.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

A matter of jurisdiction is first presented. The note, which is the foundation of plaintiff's suit, is one made by the American Bank to the Union Bank, both located in Nebraska, and under the statute, for the purpose of jurisdiction, to be considered citizens of Nebraska. 25 Stat. 436; sec. 4. The plaintiff is a citizen of New Hampshire. He could not main-

tain an action against the maker of the note, although a citizen of a State other than that of the maker and payee. 25 Stat. 434; sec. 1. But if diverse citizenship was the sole basis of the jurisdiction of the Circuit Court, the decision of the Court of Appeals would be final and there would be no appeal to this court. 26 Stat. 828, § 6. The jurisdiction of the Circuit Court, however, was not invoked on the ground of diverse citizenship—at least, not on that alone. The case presented was one arising under the laws of the United States. It was a suit to enforce a special right given by those laws. Section 5220, Rev. Stat., reads: "Any [national banking] association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock."

By section 5151, Rev. Stat., stockholders in national banks are made liable for "all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." Section 2 of the act of June 30, 1876, 19 Stat. 63, is as follows:

"SEC. 2. That when any national banking association shall have gone into liquidation under the provisions of section five thousand two hundred and twenty of said statutes, the individual liability of the shareholders provided for by section fifty-one hundred and fifty-one of said statutes may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and of all other creditors of the association, against the shareholders thereof, in any court of the United States having original jurisdiction in equity for the district in which such association may have been located or established."

More than two-thirds of the stock voted, on February 25, 1896, for a voluntary liquidation, and on April 27, 1896, the Comptroller of the Currency formally approved the liquidation and notified the cashier of the American Bank to that effect.

In proceeding, therefore, by this suit to enforce in behalf

of himself and all other creditors of the American Bank the extra liability imposed by Rev. Stat. § 5151, a case was presented arising under the laws of the United States, and of which, independently of the matter of diverse citizenship, the Circuit Court had jurisdiction.

The bill is not multifarious. "The two subjects of applying the assets of the bank and enforcing the liability of a stockholder, however otherwise distinct, are by the statute made connected parts of the whole series of transactions which constitute the liquidation of the affairs of the bank." *Richmond* v. *Irons*, 121 U. S. 27, 50.

It is suggested that no judgment had been obtained upon the note prior to this suit in equity, but as one object of the suit was to subject to the satisfaction of the debt certain property conveyed to a trustee as security therefor, no judgment at law was a prerequisite. *Day* v. *Washburn*, 24 How. 352; *Case* v. *Beauregard*, 101 U. S. 688, 691, in which the court said:

"Without pursuing this subject further, it may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies. *Tappan* v. *Evans*, 11 N. H. 311; *Holt* v. *Bancroft*, 30 Alabama, 193."

We come then to the final question in the case, and that is whether the notes executed by the American Bank were its valid obligations. And in reference to this question these are the significant facts: The demands against the American Bank were pressing. It had not the money with which to meet them. It arranged with the Union Bank to advance the money for the payment of all its outstanding obligations. When the Union Bank paid these obligations of the American Bank it was the same as though it advanced money to that bank to pay them. To reimburse and secure the former the latter bank turned over certain property, and executed these notes for the balance, securing them by a pledge of all its other assets which were placed in the hands of its president, as trustee.

All the stipulations and agreements made by the directors of the two banks were carried out in good faith; and, with full knowledge of what had been done, the stockholders voted for a voluntary liquidation. The borrowing of the money by the American Bank did not necessarily put it into liquidation. It had a large amount of assets, and if the real had equaled the nominal value of these assets it would have been enabled after discharging its obligation to the Union Bank to continue business. But on an examination the stockholders felt that it was wiser to stop at once. But that decision did not at all impugn the wisdom or *bona fides* of the transaction by which the money was obtained to pay off the pressing demands of the American Bank. The question, therefore, is, whether a national bank, finding itself embarrassed, with a large amount of assets, much in excess of its obligations, yet without the cash to make payment of those which are due and urgent, can borrow to meet those pressing demands. A very natural answer is, why not? It is not borrowing money to engage in new business. It simply exchanges one creditor for others. There may be wisdom in consolidating all its debts into the hands of one person. At least such a consolidation cannot be pronounced beyond its powers. When time is obtained by the new indebtedness (in this case a year) it gives the borrowing bank and its officers and stockholders time to consider and determine the wisdom of attempting a further prosecution of business. In the case of an individual it would be a legitimate and often a wise transaction. It is not in terms prohibited by the national banking act. *Aldrich* v. *Chemical National Bank*, 176 U. S. 618, is very clearly in point. The opinion in that case is quite lengthy and considers many authorities, but the gist of the decision is expressed in these words (p. 635):

"Without further citation of cases we adjudge, both upon principle and authority, that as the money of the Chemical Bank was obtained under a loan negotiated by the vice president of the Fidelity Bank who assumed to represent it in the transaction, and as the latter used the money so obtained in

its banking business and for its own benefit, that bank having enjoyed the fruits of the transaction cannot avoid accountability to the Chemical Bank, even if it were true, as contended, that the Fidelity Bank could not consistently with the law of its creation have itself borrowed the money."

We are of the opinion that the notes given by the American Bank for the money advanced by the Union Bank were its valid obligations and can, therefore, be enforced against its stockholders. The decree of the Circuit Court of Appeals is

*Affirmed.*