### ADAMS v. COMPO BOND CORPORATION et al.

(District Court, S. D. New York. July 25, 1922.)

1. **Banks and banking ⊜⇒265—Issuing by national bank of $100 "thrift bonds," payable in 20 years, with privilege of redeeming sooner, held not ultra vires.**

It is not an ultra vires act for a national bank to issue $100 "thrift bonds," payable in 20 years, for $50 cash, either bank or holder having the privilege after 60 days' notice of cashing or redeeming them on payment of original price plus 3½ per cent. compound interest, as these bonds are more in the nature of ordinary certificates of deposit than a borrowing in large sums from persons other than depositors.

2. **Banks and banking ⊜⇒265—Use of the words "United States of America" in the caption of national bank thrift bonds held not misleading.**

The use of the words "United States of America" in the caption of national bank thrift bonds *held* not objectionable, as tending to cause ignorant depositors to believe that the government was back of the bonds.

In Equity. Bill by J. Raymond Adams against the Compo Bond Corporation and another. Bill dismissed.

De Coursey Fales, of New York City, for complainant.

Emmet, Marvin & Roosevelt, of New York City (Langdon P. Marvin, of New York City, and George W. Martin, of Brooklyn, N. Y., of counsel), for defendants.

AUGUSTUS N. HAND, District Judge. This is a stockholders' bill to restrain the defendant bank from issuing certain instruments known as "Compo Thrift Bonds." These bonds resemble in general the government thrift stamps, which became a popular form of investment during the war. The plan was devised by the Compo Bond Corporation, which obtains a commission from the bank for furnishing the bonds.

[1] The complainant insists that their issue is ultra vires. The bonds are a promise to pay to the registered holder after a certain time a sum of money, known as the maturity value, which is arrived at by compounding interest on the original payment made to the bank by the purchaser. The interest in practice is 3½ per cent. compounded. Either the bank or the registered holder may cancel and redeem a bond at any time upon 60 days' notice, by payment of the amount originally

⊜⇒For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

advanced and approximately the accrued interest. The objection made to the issue is that it is an ultra vires act on the part of a national bank. The so-called bond acknowledges the receipt of one-half the maturity value, e. g., $50, and promises to pay to the named depositor, or his executors, administrators, or assigns, in 20 years, the maturity value, e. g., $100.

I have considered this somewhat novel instrument, and can see no essential difference in effect between it and an ordinary time certificate of deposit for $50, at 3½ per cent. compounded, with appropriate provisions for surrender and cancellation. Indeed, it does not differ from any deposit which draws interest, except that the money can only be withdrawn on 60 days' notice if the bank cares to insist upon its rights. The relation between the bank and this bondholder, as between it and its check depositors and holders of certificates of deposit, is that of debtor and creditor. The rate of interest may or may not be a subject of debate, but I do not understand that in itself it is objected to here.

It is said that a national bank should lend and not borrow money; but, as was pointed out in Wyman v. Wallace, 201 U. S. 230, 26 Sup. Ct. 495, 50 L. Ed. 738, it may in proper cases and in the normal course of its business borrow money. See Auten v. United States Bank, 174 U. S. 141, 19 Sup. Ct. 628, 43 L. Ed. 920; Aldrich v. Chemical National Bank, 176 U. S. at page 627, 20 Sup. Ct. 498, 44 L. Ed. 611. Of course, it borrows money every time it receives a deposit. State v. National Bank of Orleans (C. C.) 88 Fed. 947. This bond does not substantially differ from an ordinary certificate of deposit, and comes within none of the cases which have criticized borrowing. The kind of borrowing objected to is, I think, borrowing in large sums from persons not in the recognized class of depositors. The latter (among whom would, I think, be holders of these Compo thrift bonds) are likely to maintain something like a stable average of deposits; whereas a large lender, whether on time or call, would seem more inclined than small depositors to demand his money, if rates of interest became high and chances for investment became more favorable in other directions. In my opinion, counsel for defendants are right in saying that the kind of borrowing which has been criticized has been borrowing not resulting in deposits, and not, therefore, in the ordinary course of banking business; and the more the Compo bonds are examined the more clearly they appear to be of the substantial nature of ordinary certificates of deposit.

[2] It has been suggested that the words "United States of America," in the caption of the bonds, may lead the ignorant depositor to the belief that the government is back of the obligation. But the instrument is so clearly drawn and is so plainly the obligation of the bank that I cannot, upon reflection, regard the objection as tenable. The words "United States of America" commonly head corporate bonds, and I have never before heard it suggested that they could be misleading.

The bill is dismissed, with costs.