## HULSE v. ARGETSINGER et al.

### In re Receivership of NATIONAL BANK OF COMMERCE OF ROCHESTER, N. Y.

(District Court, W. D. New York. March 31, 1926.)

1. **Banks and banking ⬅287(3)—Ratification by shareholders of old national bank, of statutory consolidation of such bank with another, held unnecessary, where receiver appointed for old bank.**

If arrangement whereby assets of insolvent national bank where transferred to a new bank, which assumed payment of liabilities of insolvent bank, contemplated a statutory consolidation, subsequent appointment of receiver for insolvent bank made unnecessary a ratification of transfer by shareholders, as he represented stockholders and creditors.

2. **Banks and banking ⬅281—Execution of promissory note by directors of old national bank to new bank taking over assets and assuming to pay liabilities held not per se ultra vires.**

Execution of promissory note by directors of insolvent national bank to new bank, assuming to pay all liabilities of old bank, *held* not per se ultra vires, in view of pressing needs of old bank.

3. **Banks and banking ⬅287(2)—Comptroller of Currency has entire control of insolvent national bank for purpose of speedily winding up its affairs, regardless of wishes of stockholders (Rev. St. § 5234 [Comp. St. § 9821]).**

Rev. St. § 5234 (Comp. St. § 9821), authorizing Comptroller of Currency to appoint receiver for national bank when satisfied of its insolvency, gives comptroller entire control of insolvent bank, with purpose of speedily winding up its affairs, regardless of wishes of stockholders.

4. **Banks and banking ⬅═287(3)—Receiver of national bank is agent of United States, charged with duty of investigating and redressing maladministration and waste by directors and stockholders (Comp. St. § 9826).**

A receiver of a national bank, appointed by Comptroller under Comp. St. § 9826, s not the officer of the court but is agent of United States, charged with duty of investigating and redressing maladministration, waste, and dissipation by directors and stockholders in same manner as creditor or shareholder on behalf of bank might do.

5. **Banks and banking ⬅═287(3)—Discretion of receiver of insolvent national bank as to propriety of compounding liabilities of directors and transfer of assets will not be ignored unless fraud or wrong will result.**

Receiver of insolvent national bank is invested with discretion as to propriety of compounding liabilities of directors and transfer of assets of insolvent bank to another bank, which assumed payment of liabilities of insolvent bank, and his discretion will not be rejected by court unless it is clear that fraud or wrong is likely to result.

6. **Banks and banking ⬅═287(3)—Judgment of receiver of insolvent national bank and Comptroller of Currency, that proposed transfer of assets and compounding of liability of directors will result advantageously to shareholders, will be upheld, where no fraud or collusive conduct was shown.**

Judgment of receiver of insolvent national bank and Comptroller of Currency, that transfer of assets of insolvent bank to another bank assuming to pay liabilities of insolvent bank and compounding of liabilities of directors of insolvent bank will result advantageously to the shareholders, will not be disturbed, in view of absence of showing of fraud or collusive conduct and approval of full settlement by over two-thirds of stockholders of insolvent bank.

In the matter of the receivership of the National Bank of Commerce of Rochester, N. Y. Action by Jonas J. Hulse, as receiver of the National Bank of Commerce of Rochester, against George F. Argetsinger and others. On application by the receiver for an order to compound liability of directors and ratify contract. Order granted.

Carnahan, Pierce & Block, of Rochester, N. Y. (George A. Carnahan, of Rochester, N. Y., of counsel), for receiver.

Hubbell, Taylor, Goodwin & Moser, of Rochester, N. Y., for National Bank of Rochester.

James D. Harris, of Rochester, N. Y. (Edson W. Hamn, of Lyons, N. Y., of counsel), for certain stockholders.

Lee, Smyth, Wise & Bond, of New York City (Warren I. Lee, of New York City, of counsel), for certain stockholders.

James Johnston, of Rochester, N. Y., in pro per.

HAZEL, District Judge. This is an application for an order of this court under section 9821, Comp. St., to authorize Jonas J. Hulse, as receiver of the National Bank of Commerce of Rochester, appointed by the Comptroller of the Currency of the United States under section 9826, Comp. St., to compound the liability of certain directors named in the petition and ratify a contract dated May 19, 1924, entered into between the National Bank of Commerce of Rochester (herein called the old bank) and the National Bank of Rochester (called the new bank), which was organized a short time prior to the suspension of payment and business of the former. It is averred that, being unable to pay the checks and drafts of its depositors, on May 17, 1924, the old bank closed its doors and made a contract transferring a part of its assets to the new bank, which, in consideration thereof and in further consideration of the deliverance of a promissory note of $2,124,365.13 with interest, assumed paying and discharging all depositors and the liabilities of the old bank as shown on its balance sheet. The note was collaterally secured by the remaining assets, which were accepted at their face value, and also stood for any deficiency or the difference between the total liabilities (except capital stock) and net value of the pledged assets. By this arrangement the new bank became the sole creditor of the old bank.

The validity of the contract of conveyance is questioned by dissenting stockholders, and the receiver, by the proposed adjustment and settlement, contemplates removing any doubt in relation thereto by making a sale and conveyance of his right, title, and interest in the properties previously sold to the new bank. It is shown that the receiver has carefully examined into the circumstances relating to the prior transfers, and has tested the considerations and values and is convinced that full value has been given. After searching investigation lasting many months, he concluded that the old bank was insolvent at the time it suspended payment; that considerable of its property had been negligently dissipated, and dividends had unlawfully been paid for which the named directors were probably liable. Before bringing an action against them, however, the directors named in the petition suggested compromising their liabilities, with the result that negotiations to that end started. During its continuance, the prospect of amicable adjustment became uncertain, and, upon the demand of the new bank for payment of the balance unpaid up-

on its note, this action was brought and answers have been interposed by the directors denying liability. Afterwards an offer to pay $750,000 was tendered by certain directors who had contributed to a fund in settlement of all claims and causes of action against them. The amount tendered was suggested by the Comptroller of the Currency during the negotiations, and the amount is considered by him and by the receiver as a reasonable and just sum to compose all differences as to any existing liability and responsibility of the contributing directors arising out of their negligence and maladministration. The new bank has expressed its willingness to waive all claims and rights to assessments on the capital stock of the old bank to pay the balance of its note, and to the return of any dividends that may have been unlawfully paid; and in fact waives any contribution from shareholders of the old bank, on condition that the amount for which the directors are willing to compound the claim of the receiver against them be paid within a reasonable time, and on the further condition that the receiver shall release and quitclaim any rights he may have in the assets and property conveyed to it.

The receiver in his petition states that any claim against the new bank from alleged undervaluation of the transferred property is, in his judgment, doubtful and uncertain, and should be compounded and quieted, to remove any possible cloud on the title or possession.

Other facts bearing upon the questions submitted, and reasons, which I deem substantial, for compounding the liability against the directors, have been presented and appear in the petition.

A hearing has been had before this court on the order to show cause heretofore issued, and a number of stockholders in the old bank protest against the proposed settlement; and it appears, that separate stockholders' actions are pending against the directors to recover on their liability, and against the receiver and Comptroller of the Currency to vacate the receivership and to enjoin them from effectuating the proposed compromise. The dissenting stockholders contend that compounding the suit against the directors or the ratification of the transfer of assets should not be approved, since such approval or order probably leaves them remediless.

[1-3] 1. The arrangement between the two banks prior to the appointment of a receiver was not, I conceive, a statutory consolidation, but constituted a sale of the assets

for the purpose of liquidating liabilities to depositors and other claimants. If it be assumed that a statutory merger or consolidation was contemplated, the subsequent appointment of the receiver, who represents the old bank, the stockholders, and creditors, made unnecessary any ratification of transfer by the shareholders. Nor do I think, giving effect to the rule of the Supreme Court in Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738, that the making of the note in question by the directors, considering the pressing need of the old bank, was per se ultra vires. In the Wyman Case, it is true, the stockholders voted for a voluntary liquidation after the bank had borrowed money from the American Bank and assigned its assets as a collateral pledge to notes; and in Assets R. Co. v. Howard, 70 Misc. Rep. 653,[1] the right to liquidate the affairs of the bank by the vote of the directors without sanction of the stockholders was held ultra vires. But that case relates to the New York banking laws, and is believed of doubtful application here. Compare Id., 211 N. Y. 430, 105 N. E. 680. There was no discontinuance here of the corporate existence of the bank. After the receiver intervened, a stockholders' meeting would have been without controlling effect. The statute confers upon the Comptroller of the Currency, when satisfied of the insolvency of a banking association, the right to appoint a receiver and enforce existing liabilities of directors and shareholders and administer the assets and convey the same on order of the court. Section 5234, R. S. (Comp. St. § 9821). This provision, it seems to me, plainly gives the Comptroller entire control of the insolvent bank, with the evident purpose of speedily winding up its affairs regardless of the wishes of the stockholders.

[4, 5] 2. The receiver is not the officer of the court, but is the agent of the United States, charged with the duty of investigating and redressing maladministration, waste, and dissipation by directors and stockholders in the same manner as a creditor or the shareholders on behalf of the bank might do. Numerous adjudications in the Supreme Court so hold, and it is sufficient to refer to Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct 148, 36 L. Ed. 1059; and see, also, Bank v. Kennedy, 17 Wall. 19, 21 L. Ed. 554, in support of this view. Inasmuch as the rights of shareholders of a national bank are merged in the receivership, they must yield to his sound discretion and

[1] 127 N. Y. S. 798.

judgment. They may urge, as they have here, that the proposed settlement is unwise and imprudent; but, as agent of the government, the receiver is invested by law with administrative authority and power, and his discretion relating thereto ought not to be lightly ignored or rejected by the court, unless it is clear that fraud or wrong is likely to eventuate which is not apparent here. The shareholders are not without protection. No harrassing suits or demands by depositors or other creditors may be brought against them, and settlement and compounding of bad or doubtful debts and claims or liabilities are directly within the discharge of the duties of receivers.

[6] 3. The action brought on behalf of the corporation by the receiver against the directors, it is true, specifies a very large demand, but, after fully acquainting himself with the value of the various assets set forth in the contract of sale in question, and upon careful investigation of the asserted liabilities of the directors, he concluded, with the sanction of the Comptroller, that the terms of the proposed settlement will result advantageously to the shareholders and will avoid assessments and a multiplicity of suits to enforce them. There being no fraud or collusive conduct shown, I am persuaded that I should not hesitate yielding to their judgment. It is not enough to say that the receiver omits giving stockholders the complete information that they should have to satisfy themselves that reasonable discretion has been exercised; that the amount to be paid by the directors is wholly inadequate, or that the exact amount for which the receiver deems the directors liable has not been stated; that the transferred assets were undervalued; that the action against the directors should first be terminated before an assessment is made; or indeed that it should be made to appear that the directors are unable to pay more than the amount tendered by them. These contentions must give way to the declaration of the receiver and Comptroller that a reappraisement of the properties, following full and complete investigation and examination into the affairs of the old bank, would in all probability decrease the assets to meet the unpaid balance of the note—a result favorable to the directors— and also that the litigation against the directors may only be partially successful, assuming their liability is ultimately sustained, and, furthermore, that assessment of the shareholders would unquestionably result in a multiplicity of suits with doubtful consequences. In addition thereto, appreciably more than two-thirds of the holders of the capital stock of the old bank have certified to this court their approval of the contract of sale and transfer, and they ask that the action against the named directors be compounded on the offered terms.

It was suggested that the term "bad or doubtful debt" does not include debts or claims arising from misconduct of directors, but such claims, I have become satisfied, are distinguished from assessments of stock which involve a fixed statutory liability; and hence I hold that a compromise of doubtful debts contemplates claims and debts of the class with which we are concerned herein. Much has been said relating to the deprivation of the dissenting stockholders of redress sought by them in pending actions, but the order sought does not dispose or settle such actions; their disposition depending upon other questions.

For these reasons I am of the opinion that the receiver should have the order of this court as prayed.