**RICHTER et al. v. LAREDO NAT. BANK et al.**

**No. 6712.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 13, 1932.

M. J. Raymond and G. C. Mann, both of Laredo, Tex., for appellants.

S. J. Brooks, W. L. Matthews, and Howard Templeton, all of San Antonio, Tex., and Gordon Gibson and W. R. Blackshear, both of Laredo, Tex., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

On December 31, 1929, Richter, a stockholder in the First National Bank of Laredo, brought this suit on behalf of that bank against the Laredo National Bank, and later by amendment, against that bank, the First Bank, its directors as trustees, and Collier, who had been appointed its receiver. He alleged the failure of the officers and directors of the First to bring it, and their consent that the stockholders might do so. The petition in substance alleged the making, on October 3d, of a contract between the two banks by which the First's assets were taken over, its liabilities assumed by, and an indebtedness of $160,000 set up in favor of, the Laredo Bank. It alleged his ownership of fifty-eight shares of stock; that his statutory liability would be $5,800 if the indebtedness was not canceled. It further alleged that the purpose and intent of the contract was to indemnify the Laredo Bank against loss in the liquidation of the First, and that the assets exceeded by several hundred thousand dollars the debts assumed. It prayed cancellation of the claimed indebtedness, and an injunction against its enforcement.

The Laredo Bank's answer pleaded the contract, and the full performance of its terms by it, and by cross-action sought a judgment for $160,000 against the First. The First, by its answer aligned itself with Richter; Collier, its receiver, aligned himself with the Laredo Bank. He affirmed the validity of the indebtedness, and pleaded that but for the suit he would have approved it for payment.

The District Judge found that the contract had been fairly made; that it was for the direct benefit of the depositors and creditors of the First National Bank; and that in providing for an orderly, immediate, and full payment and discharge of all of its obligations it inured to the benefit of the bank and its stockholders. He found that the agreement truly recited that the liability of the bank exceeded its assets by $160,000. He found that the Laredo Bank having fully and in exact accordance with the terms of the contract carried out its agreement, the First Bank should perform its part. He entered a decree adjudicating the contract valid and condemning the bank to pay $160,000 as it had agreed to do under the contract.

We think the record fully supports the findings and the decree. We will briefly summarize it.

In September 1929, the First National Bank of Laredo had become crippled and embarrassed by a slow run which it had been

for sometime undergoing. The directors finding themselves faced with the necessity, unless they could secure assistance, of closing the bank's doors, sought urgently for aid. Efforts to prevent this disaster, with its inevitably consequent shocks and losses to, and the disruption if not·destruction of the business of, the depositors and customers of the bank, failing in the quarter where they had hoped to obtain aid, the directors turned to the Laredo National Bank. That bank agreed in consideration of the transfer to it of all of the'First's assets, and the setting up on the ledgers of an indebtedness to it of $160,000, the agreed excess of liabilities over assets, to assume and take over, and in .the regular course of business meet and discharge, all of the obligations of the First Bank. This agreement, made in co-operation and after consultation with representatives of the Comptroller, represented an arrangement which all those concerned in the negotiations believed the emergency urgently required. It was not made at the solicitation, or upon the urgency, of the Laredo Bank. On the contrary, that bank went into it unwillingly, and reluctantly, and only after it had, in addition to making it clear in the agreement that it was looking for payment of the indebtedness to the statutory liability of the shareholders,[1] further emphasized that reliance by conditioning its entry into the agreement upon the deposit in escrow of $74,000, nearly one-half of the amount of the acknowledged indebtedness. This sum, representing the full amount of their statutory liability, was deposited by some of the largest shareholders of the First Bank.

The agreement, plain and clear on its face, was entered into in good faith by the two banks; it was approved by the representative of the Comptroller; it was in the interest of the First Bank, whose primary obligation was the protection of its depositors; and it was by the Laredo Bank carried out exactly as agreed. What the directors of the First Bank were contemplating doing, what they did, was known to practically every stockholder either before or immediately after it was done. No stockholder has ever made any protest against, or objected to, the assumption and discharge by the Laredo Bank of the

First's obligations. None of them have ever sought to set aside any feature of the agreement, except the provision in it for the payment of the agreed amount by which the liabilities exceeded the assets; nor have any of them ever offered to restore the Laredo Bank to the position it had before the agreement was made. Richter, one of the plaintiffs, in addition to being a stockholder in the First Bank, was one of the large depositors. His account as such was with his consent and approval transferred to and taken care of by the Laredo Bank. At the meeting of the stockholders of the First Bank held on November 18, for the purpose of voting the dissolution of the bank, .the transaction, in so far as it had resulted in setting up a debt as a basis for stockholding liability, was objected to; but the arrangement by which the First's depositors were cared for and its debts paid in full, without a moment's inconvenience or delay, was not repudiated or asked to be set aside. The stockholders at this meeting contented themselves with entering a vote of confidence in their directors, and academically asserting that since the action of the Laredo Bank had prevented the First Bank from actually liquidating, "the stockholders at this time decline to take further action with reference to the contract." That this transaction, entered into in good faith, without fraud, and for the best interests of the bank, was not in its nature illegal or beyond the powers of the corporation, is clear. Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738. Section 91, title 12, USCA, invoked by appellants does not condemn it. That section strikes at transfers, fraudulent in their nature and effect. It is designed to prevent, it prevents, the application of. the assets of a bank to purposes other than in the interest of its creditors, or so as to effect a preference among them. The contract in this case was designed to, it did, accomplish the very purpose of the statute. It was made with a view to insuring the payment of all its depositors and creditors and the prevention of the preference of any. Wyman v. Wallace, supra; Wegman v. Nat. Bank of Commerce (D. C.) 51 F.(2d) 288; Hulse v. Argetsinger (D. C.) 12 F.(2d) 933; City National Bank of Huron v. Fuller (C. C. A.) 52 F.(2d) 870, 79 A. L. R. 71; Chase v. Hall (C. C. A.) 30 F.(2d) 195; Hightower v. American Nat. Bank, 263 U. S. 351,. 44 S. Ct. 123, 68 L. Ed. 334.

Some of the above-cited cases hold that an emergency gives the directors power to make a fair contract for the protection of its depositors of the kind in question here, and

---

[1] The agreement provided that the $160,000 indebtedness will be set up on the general ledgers of the First National Bank as an indebtedness to the Laredo National Bank. It further provided that in the event the First National Bank is unable to pay the liability when demand is made upon it, the Laredo National Bank may request the Comptroller of the Currency to appoint a receiver for the First National Bank for the purpose of enforcing the liability of its shareholders.

that authorization or ratification of it by the stockholders is unnecessary. In some of them it is held that the receiver appointed by the Comptroller stands in the place of the stockholders and his act in ratifying the contract makes ratification of it by the stockholders unnecessary. In all of them it is held that what question of power there is in the case is not of the power of the corporation itself, but whether those who have acted for the corporation had the authority which they assumed to exercise.

The writer is strongly inclined to the view that while ordinarily, that is, while the bank is a going concern and in the absence of extreme emergency, the directors may not make a complete transfer of its properties without the consent of its stockholders, circumstances requiring emergency action to save the bank from failure and the depositors from loss do confer upon the directors the authority to make contracts of the general nature of the one in question here. That when they have so acted, in the face of an apparent emergency, the contract stands, unless the stockholders can, in a timely attack upon it, show either that there was no real emergency, or though there was an emergency that the contract was made in fraud or bad faith, or was so oppressive as to them as to entitle them to relief against it.

We are not, however, called upon to so decide here. We do not do so. The facts of this case not only give rise to the conclusion that the acts of the directors, taken to meet a real emergency, were in advance authorized by some of the stockholders and afterwards ratified and approved by them all, they compel it. The action complained of here was taken in a real, a gravely serious emergency. Some of the largest stockholders, approving it before it was done, paid into an escrow account the amount of their statutory liability. The contract was found to be, it was, fair and for the benefit of all concerned. It was made with the co-operation, advice, and approval of the representative of the Comptroller, and since his appointment the receiver of the bank has also approved it. To hold otherwise than that the making of the contract in this case was fully within the authority of the bank, and that those who executed it were fully authorized to do so, would be to give the stockholders the benefits of the contract they have authorized without requiring them to stand to its burdens.

We think no other judgment than the one appealed from could have been justly entered in this case. It is affirmed.