## THIRD NAT. BANK & TRUST CO. OF SCRANTON v. McMAHON.
### No. 1220.

District Court, M. D. Pennsylvania.

Feb. 5, 1937.

Gunster, Mackie & Murphy, of Scranton, Pa., for complainant.

Thomas A. Doherty, of Susquehanna, Pa., for respondent.

JOHNSON, District Judge.

The bill of complaint prays the court to determine the rights between the complainant and the respondent, and to direct the complainant to liquidate $10,000 Michigan Electric Power Company bonds, held by it as collateral security for a loan in the amount of $2,495.38 made by it to the First National Bank of Forest City, and apply the proceeds thereof together with a deposit of $8,864.24 held by it and standing to the credit of the First National Bank of Forest City, to pay in full the $2,495.38 loan and two deposits held by the First National Bank of Forest City, one in the amount of $2,924.30 standing to the credit of the complainant as trustee, and the other in the amount of $3,487.21 standing to the credit of the complainant in its own right. The respondent filed an answer admitting all the material facts and admitting that the complainant may apply so much of the $8,864.24 deposit as is necessary to pay the $2,495.38 loan and the $3,487.21 deposit.

The respondent denies that the complainant may apply any of the $8,864.24 deposit or the collateral security toward payment of the $2,924.30 trust fund deposit and prays that the collateral security and the balance remaining of the $8,864.24 deposit be returned to it. The complainant then filed a motion to strike out and dismiss the answer because it is insufficient to constitute a defense.

From the bills and answer the court arrives at the following

I. Findings of Fact:

1. That Third National Bank & Trust Company of Scranton, hereinafter called complainant, and First National Bank of Forest City, hereinafter called First National Bank, are corporations organized as national banks under the laws of the United States of America with their banks and principal places of business at Scranton and Forest City, respectively.

2. That on or about March 5, 1933, First National Bank was closed by proclamation of the President of the United States of America and the respondent, Joseph P. McMahon, is now the duly qualified and acting receiver.

3. That First National Bank is and was insolvent since it closed.

4. That at the time First National Bank closed its doors on March 5, 1933, and continuously since then, it has had on its books a deposit account in the amount of $3,487.21 belonging to the complainant in its own right, and a deposit account in the amount of $2,924.30 belonging to the complainant as trustee for the benefit of various persons.

5. That at the time First National Bank closed its doors, and continuously since then, complainant has had on its books a deposit account in the amount of $8,864.-24 belonging to the First National Bank in its own right.

6. That at the time First National Bank closed its doors, and continuously since then, its promissory note in the amount of $2,495.38, together with $10,000 Michigan Electric Power Company bonds as collateral, has been held by complainant. This note was the last of a series of collateral notes made, executed, and delivered by the First National Bank, representing the balance outstanding on a loan made by the complainant to the First National Bank.

7. That said note, a copy of which is attached to the bill and by reference is made a part hereof, sets forth that the First National Bank, the undersigned, "Promises to pay to the order of the Third National Bank and Trust Company of Scranton, Pa., Two Thousand four hundred ninety-five and 38/100 dollars at said Third National Bank and Trust Company of Scranton, Pa., having deposited as collateral security for payment of this or any other liability or liabilities of the undersigned to the holder hereof, due or to become due, or that may hereafter be contracted, including liabilities acquired by the holder hereof through third parties, the following property, namely: 10,000 Bonds Michigan Electric Power Company. * * * "

8. That respondent admits that the complainant may deduct from the said $8,864.24 deposit to the credit of the First National Bank the said $3,487.21 deposit to the credit of the complainant and the further sum of $2,495.38 with interest, representing the amount due to the complainant on the said promissory note.

From the foregoing facts the court arrives at the following

## II. Conclusions of Law:

1. That complainant is entitled to apply so much of the $8,864.24 deposit to the credit of the First National Bank as is necessary to pay in full the $3,487.21 deposit to the credit of the complainant and the $2,495.38 with interest, representing the amount due complainant on the promissory note.

2. That the $2,924.30 deposited with the First National Bank by the complainant as trustee is not secured by the said $10,000 Michigan Electric Power Company bonds and cannot be offset by the said $8,864.24 deposit.

3. That a national bank has no power to pledge any of its assets to secure a loan and also a private deposit of the lending bank.

4. That after making the application referred to in conclusion of law No. 1, the balance remaining in the $8,864.24 deposit, together with the $10,000 Michigan Electric Power Company bonds held by complainant as collateral, shall be returned by complainant to the respondent.

## III. Opinion.

The specific problem here is whether the $2,294.30 deposited with the First National Bank by the complainant as trustee is secured by the note and the collateral held by the complainant. This raises the question whether a national bank has the power to borrow money from another bank and to pledge its assets to secure not only the loan but also a private deposit of the other bank. Complainant contends that the power of making loans under such reasonable terms as it could obtain, including the pledge of assets to secure a deposit, is incidental to the powers of carrying on the business of banking.

National banks have the power to borrow money and to pledge assets to secure the loan, Wyman v. Wallace, 201 U. S. 230, 26 S.Ct. 495, 50 L.Ed. 738, but lack the power to pledge assets to secure a private deposit, Texas & P. Ry. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777; Smith v. Baltimore & O. R. Co. (D. C.) 48 F.(2d) 861; Baltimore & O. R. Co. v. Smith (C.C.A.) 56 F.(2d) 799; Illinois Central R. Co. v. Rawlings (C.C.A.) 66 F. (2d) 146. There does not appear to be any case deciding the instant question, but the reasons which impelled the courts to conclude that national banks cannot pledge their assets to secure a private deposit equally impel this court to conclude that they have no power to pledge their assets to secure a loan and a private deposit. A national bank has no such express power and, if it has any implied power to do the same, it must come within such "incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C.A. § 24 (7). There is nothing in the record before the court to show that, in order to obtain the loan, it was necessary for complainant to pledge its assets to secure not only the loan, but also a deposit; nor is there anything in the record to indicate that the exercise of such power is necessary to carry on the business of banking. The mere fact that it might be convenient does not make it necessary to carry on the business of banking. See Texas & P. Ry. Co. v. Pottorff, supra, 291 U.S. 245, at pages 255, 256, 54 S.Ct. 416, 418, 78 L.Ed. 777; Smith v. Baltimore & O. R. Co., supra, 48 F.(2d) 861, at page 868. If such practice were lawful, a national bank could do indirectly what it cannot do directly. Upon repayment of the loan, the pledge could be retained solely to secure a private deposit. This would lead to many injurious practices which would reduce the quick assets available for unusual demands, as well as cause a few depositors to be favored over the many.

"The power conferred upon national banks should not be so interpreted as to authorize an injurious policy unless a fair construction of the language clearly requires it." Baltimore & O. R. Co. v. Smith (C.C.A.) 56 F.(2d) 799, at page 803.

Since a national bank has no power to pledge its assets to secure a loan and a deposit, it is unnecessary to determine whether the trust funds deposit is included within the liabilities secured by the promissory note referred to in finding of fact No. 7.

The complainant admits that the trust fund deposit cannot be offset by a general deposit. Gordon, Secretary of Banking, v. Union Trust Co., 308 Pa. 493, 162 A. 293;

872

Thomas v. Potter Title & Trust Co. (D.C.) 2 F.Supp. 12; United States v. Butterworth-Judson Corp., 267 U.S. 387, 45 S. Ct. 338, 69 L.Ed. 672.

A decree in accordance with the foregoing findings of fact, conclusions of law, and opinion may be submitted.