ICKES, SECRETARY OF THE INTERIOR, v. UNITED STATES ex rel. CHESTATEE PYRITES & CHEMICAL CORP.

No. 767. Argued April 21, 1933.—Decided May 29, 1933.

*Assistant Attorney General Richardson*, with whom *Solicitor General Thacher* and *Mr. Paul D. Miller* were on the brief, for petitioner.

*Mr. Edgar Watkins*, with whom *Messrs. Mac Asbill, Edgar Watkins, Jr.*, and *Marion Smith* were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The claim of the Chestatee Pyrites & Chemical Corporation for compensation under the War Minerals Relief Act, March 2, 1919, c. 94, § 5, 40 Stat. 1272, 1274, is here for the fourth time.[1] Before the World War the company

---

[1] See *Work v. U.S. ex rel. Chestatee Pyrites & Chemical Corp.*, 267 U.S. 185; *Wilbur v. U.S. ex rel. Chestatee Pyrites & Chemical Corp.*, 284 U.S. 231, 237–8; *Wilbur v. U.S. ex rel. Chestatee Pyrites & Chemical Corp.*, 288 U.S. 97

owned a pyrites mine. In 1918, it made extensive enlargements of its plant at the request of the Secretary of the Interior. As hostilities ceased soon thereafter, the undertaking resulted in a large loss. Prior to 1922, it made applications for relief from the losses suffered. These applications resulted in awards aggregating $737,-765.24. Of this amount $223,529.17 was paid by the Government on October 25, 1919; $469,784.62 on October 5, 1922; and $44,451.45 on March 14, 1932.[2]

The demand now presented is for the further sum of $514,276.43, alleged to have been due December 31, 1931; and for additional amounts which cannot be stated definitely because they are accruing daily. These sums, claimed as items of loss, represent interest paid or accrued since March 2, 1919, on a contract to repay with interest $645,000 borrowed by the Corporation in 1918, mainly in order to pay for enlarging the plant.[3] In 1922, the Secretary had, in calculating losses suffered, refused to allow any sum paid for interest on borrowed money. The Corporation thereupon sought, by mandamus, to compel the award of interest. In that proceeding this Court held, in 1925, that mandamus must be denied, because the Act made the determination of the Secretary conclusive,[4] *Work v. U.S. ex rel. Chestatee Pyrites & Chemical Corp.,*

---

[2] Since then two additional awards have been made to the Corporation, which are not directly involved in this case. On December 7, 1932, an award of $1,584.76 was made on account of taxes. And on February 23, 1933, a further award of $90,500 was made by the Secretary pursuant to the decision in *Wilbur v. U.S. ex rel. Chestatee Pyrites & Chemical Corp.*, 288 U.S. 97. The Corporation has thus received awards aggregating $829,850.

[3] The loans totaled $695,000; but it was found that "$50,000 of the amount was loaned prior to stimulation."

[4] The Act declared in § 5: "The said Secretary shall make such adjustments and payments in each case as he shall determine to be just and equitable; that the decision of said Secretary shall be conclusive and final. . . ." 40 Stat. 1274.

267 U.S. 185. The proceeding at bar is a second petition for mandamus, filed pursuant to an amendment of the Act made February 13, 1929, c. 182, 45 Stat. 1166, which authorized a claimant thereunder to "petition the Supreme Court of the District of Columbia to review the final decision of the Secretary of the Interior upon any question of law which has arisen or may hereafter arise in the adjustment, liquidation and payment of his claim under said Act."

The Corporation sought in the second petition for mandamus, as in the first, to compel the Secretary to consider, in determining the amount of net losses, interest payable on borrowed money. The trial court denied the mandamus. Its judgment was reversed by the District Court of Appeals, 60 App. D.C. 62; 47 F. (2d) 424; and in sustaining the reversal, in *Wilbur* v. *U.S. ex rel. Chestatee Pyrites & Chemical Corp.*, 284 U.S. 231, 237, 238, we said: "The amount of interest that at the time of the passage of the Relief Act, March 2, 1919, had been paid or incurred by relator for money borrowed and lost in producing and preparing to produce pyrites upon the specified conditions is to be taken into account in determining the amount of its net loss as of that date." Thereupon, the Secretary made an award of $44,451.45, this amount being, as stated by him, "the amount of interest that at the time of the passage of the act of Congress of March 2, 1919, had been paid on the obligations incurred by the relator for money borrowed and lost in producing and preparing to produce pyrites . . . and for which in justice and equity the relator was entitled to receive reimbursement . . . "

The Corporation insists that there should, as stated, be allowed, as part of its net loss, on account of interest payable on borrowed money, the further sum of $524,276.43, and, also, additional amounts which can not be

definitely stated now. The $524,276.43 represents interest paid or accrued between March 2, 1919, and December 31, 1931, growing out of obligations for borrowed money outstanding March 2, 1919. The claim for additional unascertained amounts represents the interest which has accrued on those obligations since December 31; 1931, plus that which will accrue hereafter on such parts thereof as may, from time to time, be outstanding. To enforce this demand, the Corporation secured a rule upon the Secretary to show cause why he had not complied with the decree entered pursuant to our decision in the *Wilbur* case. The Secretary averred that he had fully complied therewith, by allowing all interest paid or accrued to March 2, 1919; and that this was all the interest "for which in justice and equity the relator was entitled to receive reimbursement from the appropriation made by Congress for the payment of such losses." The District Court sustained the position of the Secretary. Its judgment was reversed by the Court of Appeals of the District, 61 App. D.C. 324; 62 F. (2d) 863. This Court granted certiorari, 288 U.S. 590. We think the District Court was right.

*First.* The Corporation contends that in computing losses which "have been suffered" as of March 2, 1919, no distinction can be drawn between the principal of the loan and the interest thereon; that as the amount of the principal was included without question in ascertaining the loss as of March 2, 1919, although the loan was not then due, the amount of the interest should similarly be included, whether it had been paid or had accrued as of that date or had accrued later. The argument rests upon a misconception.

Congress did not authorize or direct the Secretary of the Interior to pay any loan of a claimant. Section 5 of the War Minerals Relief Act, March 2, 1919, authorized

the Secretary to "adjust, liquidate, and pay such net losses as have been suffered by any person, firm, or corporation, by reason of producing or preparing to produce ... pyrites ... in compliance with the request or demand of the Department of the Interior ... to supply the urgent needs of the Nation in the prosecution of the war."[5] The $645,000 capital raised by the loan, like some other capital of the Corporation, was wiped out by the deficit in operation and the shrinkage of capital assets. And for the loss thus sustained the Corporation was reimbursed by the payments under the award made. The cost to the Corporation of carrying the loan after March 2, 1919, was not part of the net losses which had "been suffered."

The method of determining the net losses in such businesses during a particular period, or in a particular adventure, is well settled.[6] The net losses consist of any deficit from operations plus any shrinkage in value of the plant investment. In calculating the loss for a period it is immaterial whether items entered as operating expense or as investment have been paid or are still owed for. If the capital employed by the Corporation during the period, whether owned or borrowed, was sunk, its loss

[5] The section was amended November 23, 1921, c. 137, 42 Stat. 322, by adding "that all claimants ... shall be reimbursed such net losses as they may have incurred and are in justice and equity entitled to from the appropriation in said Act"; and "If in claims passed upon under said Act [of March 2, 1919] awards have been denied or made on rulings contrary to the provisions of this amendment, or through miscalculations, the Secretary of the Interior may award proper amounts or additional amounts."

[6] See, e.g., T. O. McGrath, Mine Accounting and Cost Principles (1921), pp. 147, 178–179; R. B. Kester, Accounting Theory and Practice (1918), pp. 487–488; H. A. Finney, Principles of Accounting (1931), c. 3, pp. 4–7; W. J. Graham and W. G. Katz, Accounting in Law Practice (1932), pp. 27–33.

will necessarily be reflected either in the deficit from operations or in the shrinkage in value of the capital assets. In calculating the operating deficit during the period ending March 2, 1919, interest paid or accrued on the borrowed capital was treated as an operating charge. Interest accruing thereafter on any loan then outstanding is comparable to the cost of caring, after that date, for property retained—or to a lessening, after that date, of the value of that property. Such items enter into the determination of the losses of a later period; and with these the Government has no concern. Hence, the Secretary properly refused to consider interest accrued after March 2, 1919, in calculating losses during the period ending that day.

*Second.* The Corporation insists that the Act should be construed as requiring the Secretary to include as an item in the loss suffered before March 2, 1919, all interest thereafter accruing on an " obligation incurred " before that date. It argues that a liberal construction of the Act requires this conclusion, *United States* v. *New York*, 160 U.S. 598, 620, particularly in view of related legislation.[7] In support of that construction, it points to provisos of § 5 which declare (1) that " no claims shall be allowed or paid " by the Secretary " unless it shall appear to the satisfaction of the said Secretary that the expenditures so made or obligations so incurred were made in good faith " and (2) " that moneys were invested or obligations were incurred subsequent to " April 6, 1917, and

---

[7] Act of October 5, 1918, c. 181, 40 Stat. 1009, entitled "An Act to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of those ores, metals, and minerals which have formerly been largely imported, or of which there is or may be an inadequate supply"; and Act of June 7, 1924, c. 327, 43 Stat. 634, which removed the limitation of $8,500,000 as the amount payable in the aggregate on claims under the Act of March 2, 1919.

prior to November 11, 1918.[8]   These provisos did not by referring to obligations " incurred " enlarge the Secretary's authority to " pay such net losses as have been suffered."   On the contrary, their purpose was to make clear that where expenditures were alleged, the Secretary must be satisfied that payment therefor had actually been made or that there was a valid agreement to pay therefor.

When this Court stated in the *Wilbur* case that in determining the loss as of March 2, 1919, there shall be taken into account " the amount of interest which has been paid or incurred by relator for money borrowed and lost," the word " incurred " was used to mean interest accrued on that date, as well as interest paid.   The language of the opinion was correctly construed by the Secretary when he limited the additional award, on account of interest, to $44,451.45.

*Reversed.*

---

[8] Among the provisos are the following: "And provided further that no claim shall be allowed or paid by said Secretary unless it shall appear to the satisfaction of the said Secretary that the expenditures so made or obligations so incurred by the claimant were made in good faith for or upon property which contained either manganese, chrome, pyrites, or tungsten in sufficient quantities to be of commercial importance. *And provided further,* that no claim shall be paid unless it shall appear to the satisfaction of said Secretary that moneys were invested or obligations were incurred subsequent to April sixth, nineteen hundred and seventeen. . . ."