### ABERLY et al. v. CRAVEN COUNTY, N. C.

### CRAVEN COUNTY, N. C., v. NATIONAL BANK OF NEW BERN et al.

#### Nos. 3580, 3595.

Circuit Court of Appeals, Fourth Circuit.
April 3, 1934.

Thos. D. Warren and L. I. Moore, both of New Bern, N. C. (Moore & Dunn and Warren & Warren, all of New Bern, N. C., on the brief), for Craven County.

R. E. Whitehurst and A. D. Ward, both of New Bern, N. C. (R. A. Nunn, H. P. Whitehurst, and C. L. Abernethy, all of New Bern, N. C., on the brief), for National Bank of New Bern, Griffin, Schumacher, and stockholders of National Bank of New Bern.

W. B. Rouse, of New Bern, N. C., for Aberly and Hargett.

Before PARKER and SOPER, Circuit Judges, and WILLIAM C. COLEMAN, District Judge.

PARKER, Circuit Judge.

The National Bank of New Bern, which we shall refer to hereafter as the old bank, found itself in financial difficulties in the early part of 1929, and on March 20th of that year entered into a contract with the First National Bank of New Bern, which we shall refer to as the new bank. This new bank was organized to take over the business of the old; and from one of the records before us it appears that its capital stock was paid for by funds loaned by Craven county to a certain investment corporation, and loaned by that corporation to the stockholders of the new bank to enable them to subscribe to the stock. Under the contract between the old and new banks, all of the liabilities of the old bank, except liability to stockholders, were assumed by the new bank, and assets of a value $250,000 less than the liabilities so assumed were transferred to it. A demand note for this $250,000 difference was executed by the old bank to the new, and the remaining assets of the old bank were assigned as collateral security to this note. The new bank thereupon began business at the location and with the equipment of the old. The contract and accompanying transfers were executed by the directors of the old bank on March 20, 1929 and a liquidating agent was then appointed for that bank.

The action of the directors placing it in liquidation was approved by a meeting of stockholders the following July. In October of that year the new bank became insolvent and was placed in the hands of a receiver, owing an amount in excess of half a million dollars on the indebtedness of the old bank which it had assumed.

Shortly before the receiver of the new bank was appointed, and at a time when its insolvency was evident to its officers, and stockholders, the $250,000 note of the old bank with the accompanying collateral was assigned to Craven county as security for the county funds which it held on deposit; the assignment of the note being made, according to the county's contention, pursuant to a prior agreement. Suit was promptly instituted against the county by the receiver of the new bank to establish his right to the note and the collateral pledged by the old bank to secure it; and the transfer to the county was attacked as preferential. The county prevailed in this litigation, however, and a decree was entered holding that it was entitled to the note and supporting collateral as security for a deposit account which was definitely adjudged to be $123,123.02. Of this amount it appears that $7,323.02 represented sinking funds of the county which were on deposit with the old bank. No appeal was taken from this decree; and no reason appears why it should not be held binding upon the parties.

Shortly before the termination of the suit by the receiver against the county, this suit was instituted by the county against the receiver and the old bank and its liquidating agent; and stockholders in that bank were made parties defendant by order of court subsequently entered. The bill alleged the indebtedness of the new bank on account of the deposit of the county, the pledge of the $250,000 note as security therefor, the inability of the county to realize anything in excess of a comparatively small amount on the collateral pledged with it, the necessity of enforcing the liability of the stockholders of the old bank to raise funds to discharge its obligations, the refusal of the Comptroller of the Currency to appoint a receiver to enforce this liability, and the refusal of the receiver of the new bank to apply for a receiver to the end that such liability might be enforced. It prayed for the appointment of a receiver for the old bank, the enforcement of the liability of its stockholders for the benefit of creditors, for judgment against the old bank on the $250,000 note, and for

other relief relating to the sale of collateral. Answers were filed to the bill in which it was alleged that the $250,000 note was not executed by the old bank in the due course of business; that the new bank had failed to pay the obligations of the old bank which it had assumed to the extent of approximately $500,000; that the note was transferred to the county with a view of creating a preference; and that the county was not a holder thereof in due course. Necessity for the appointment of a receiver or for enforcing the liability of the stockholders of the old bank was denied on the ground that its only possible creditor was the holder of the $250,000 note and that this note was invalid and not collectible because of the failure of the new bank to pay off the obligations of the old. A replication filed by the county pleaded the decree in the former case as establishing the right of the county to the $250,000 note, and set forth, among other things, that the suit was brought in behalf of itself and all other creditors of the old bank. The case was referred to a special master and a large volume of testimony was taken; but only a very small part of this has been certified as a part of the record. Additional portions have been certified by the clerk of the court below as addenda; but we cannot consider them, as they have not been made a part of the record by certificate of the judge.

▮▮ The judge below found that the execution and delivery of the $250,000 note by the old bank to the new was as heretofore stated, but held that the note was not "the contract or engagement" of the old bank "incurred in the ordinary course of the banking business." He further found that the new bank had failed to discharge deposit liabilities of the old to an amount in excess of $500,000, and held that there was a failure of consideration for the note. With respect to the rights of the county as holder, he found that no consideration passed at the time of the pledge to the county; that no prior promise to pledge had been made; that the pledge had been made after a reasonable time for demand and payment had elapsed and the note had become past due; and that the county took it with notice of the equities existing between the maker and payee. He therefore held that the county was not a holder of the note in due course, but took it subject to the equities and defenses existing in favor of the old bank. There was a further finding that the transfer to the county was made by the bank in contemplation of insolvency and with intent to create a pref-

erence. On these findings and conclusions, a decree was entered dismissing the bill as against the stockholders, and the county has appealed. Two of the stockholders also have appealed, contending that the decree dismissing the bill should have been based on additional grounds; but manifestly they cannot appeal from a decree altogether in their favor, which will be sustained if any ground appears in the record which will sustain it. The record which has been certified in connection with their appeal, however, will be considered in connection with the appeal of the county, as it is a part of the record before the court below and has been certified as such by the judge.

▮ We can dismiss at once all arguments to the effect that the transfer of the note to the county was void because preferential and made in contemplation of insolvency, as this is a question between the county and the receiver of the new bank with which the stockholders of the old bank have no concern. This is a question, moreover, which has been raised and settled in the suit brought by the receiver for that purpose; and, while the decision of the court in that suit may have been erroneous in view of the later decisions of the Supreme Court in the cases of Texas & Pacific R. Co. v. Pottorff, 54 S. Ct. 416, 78 L. Ed. ——, and City of Marion v. Sneeden, 54 S. Ct. 421, 78 L. Ed. ——, there was no appeal therefrom, and there can be no question as to its binding effect as between the parties. Tait v. Western Maryland R. Co.., 289 U. S. 620, 53 S. Ct. 706, 77 L. Ed. 1405; Id. (C. C. A. 4th) 62 F. (2d) 933. And we can likewise dismiss all contention that the county was a holder of the note in due course. It is clear that the county officers knew all about the purpose for which the note was given and the obligations assumed by the new bank as consideration therefor, and certainly the circumstances surrounding the transfer were sufficient to put them on notice that the new bank was on the verge of insolvency and unable to carry out the obligations which it had assumed. The judge's findings that the transfer of the note to the county was without consideration, that its note was to be deemed past due at that time because it had not been presented for payment within a reasonable time, and that the county was affected with notice of the equities existing between the maker and payee, are binding upon us unless clearly wrong; and there is nothing in the record which would justify us in reversing them. It is clear, therefore,

that the county held the note, not as a holder in due course, but subject to any defenses which might have been asserted against it in the hands of the new bank; and the case narrows itself to two questions: (1) Whether the note is invalid for lack of power in the officers of the old bank to execute it; and (2) whether the failure of the new bank to meet the obligations assumed constitutes a defense which the stockholders of the old bank may assert to defeat their statutory liability as stockholders.

On the first question it appears that the note was executed as an incident of a sale made of the assets of the bank when it was facing insolvency and in an attempt to save its depositors and stockholders. The power of the directors to make such a transfer of assets and the validity of a note given under such circumstances have been decided too often to justify further discussion of the matter. See Hightower v. American National Bank, 263 U. S. 351, 44 S. Ct. 123, 68 L. Ed. 334; Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738; Wannamaker v. Edisto National Bank of Orangeburg (C. C. A. 4th) 62 F.(2d) 696; Scott v. Norton Hardware Co. (C. C. A. 4th) 54 F.(2d) 1047, 1049; Richter v. Laredo National Bank (C. C. A. 5th) 62 F.(2d) 289; City Nat. Bank of Huron v. Fuller (C. C. A. 8th) 52 F.(2d) 870, 872, 79 A. L. R. 71; Harris v. Briggs (C. C. A. 8th) 264 F. 726; Hulse v. Argetsinger (D. C.) 12 F.(2d) 933; Wegman v. National Bank of Commerce (D. C.) 51 F. (2d) 288.

On the second question, the determinative facts have not been found by the court below and do not appear from the record before us. All that we feel certain of with respect to this question is that the stockholders of the old bank have not been relieved of their statutory liability as a result of the execution and transfer of the note. But whether the fund created by the enforcement of that liability should go to plaintiff as holder of the note or to depositors in the old bank whose claims for deposits the new bank has failed to pay is a question which should not be determined until all of the facts are fully before the court. If the depositors and creditors of the old bank, with knowledge of the circumstances attending the transfer of assets from the old bank to the new, entered into a novation whereby they not only accepted the new bank as their debtor, but also released the old bank from any obligation to them, then the old bank has suffered no loss as a result of the failure of the new, and has nothing to offset against the note which is its only remaining obligation. If, on the other hand, the depositors of the old bank have not released it from liability for their deposits and it is still obligated to pay them, the failure of the new bank has resulted in loss to the old which it can assert as a defense against the note. See Treadwell v. Fagan (C. C. A. 5th) 68 F.(2d) 550. In the latter alternative, however, the liability of the stockholders of the old bank should be enforced for the benefit of its depositors, who should be made parties to the suit and allowed to prove their claims, and the county would still have sufficient interest in the suit to justify its presence in court by reason of the sinking fund which it had on deposit with the old bank.

As equities which we cannot foresee may arise upon the further hearing of the case, we shall not attempt to direct the action of the court below except to order that the decree appealed from be set aside, and further proceedings be had in conformity with this opinion, with right to the parties to file additional pleadings and present further evidence. In case No. 3595, therefore, the decree will be reversed and the cause remanded for further proceedings. In case No. 3580, the appeal will be dismissed.

No. 3580, appeal dismissed.

No. 3595, reversed and remanded.