**NELSON v. ICKES, Secretary of the Interior.**

No. 7342.

United States Court of Appeals for the District of Columbia.

Decided May 20, 1940.

Ralph A. Cusick, of Washington, D. C., for appellant.

Frederic L. Kirgis and Jackson E. Price, both of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from a judgment which is the culmination of proceedings instituted by appellant in 1919 before the Secretary of the Interior to secure relief under the War Minerals Relief Act.[1] That Act was amended several times to broaden the scope of allowable relief.[2] By the Act of February

[1] Of March 2, 1919, 40 Stat. 1272, 50 U.S.C.A. § 80 note. Section 5, which is involved here, authorized the Secretary "to adjust, liquidate, and pay such *net losses* as have been suffered by any person, firm, or corporation, by reason of *producing or preparing to produce*, either manganese, chrome, pyrites, or tungsten in compliance with the request or demand of the Department of the Interior [and other enumerated agencies] . . . to supply the urgent needs of the Nation in the prosecution of the war * * *." (Italics supplied) The Secretary was required to "make such adjustments and payments in each case as he shall determine to be just and equitable"; aggregate payments and expenses of administration were not to exceed $8,500,000, and were to be made only upon claims filed within three months from approval of the Act, on account of payments made or obligations incurred between April 6, 1917, and November 12, 1918, "in good faith for or upon property" which contained the enumerated minerals in commercial quantities and "in a legitimate attempt to produce" them. The Secretary was prohibited to include "profits of any kind" and "investment [s] for merely speculative purposes." The Act made the Secretary's decision "conclusive and final." Cf. note 3 infra.

[2] Act of November 23, 1921, c. 137, 42 Stat. 322, amending Section 5 of the Relief Act to include claims made in response to request or demand of other agencies and in other ways than those enumerated in that Section, interpreted also in connection with the original act

13, 1929, provision was made for judicial review, theretofore entirely lacking,[3] of the Secretary's decisions upon questions of law in defined instances.[4] Under these Acts an award was made on September 14, 1933, and paid to appellant.[5] It did not include losses on account of interest which accrued after March 2, 1919, the date of the original Act, upon obligations incurred in the statutory period for purposes contemplated by the Act.[6] It amounted to $21,713.44, which included $20,495.73 for net losses resulting from the purchase of property and $1,217.-71 for net losses in connection with the payment or accrual of interest to March 2, 1919. The award was made pursuant to a consent decree entered in this cause March 3, 1933, which directed the Secretary in effect to reopen his previous determinations in order to ascertain whether appellant had incurred allowable losses in respect to these items.[7] By making the award the Secretary admittedly complied with the consent decree in all respects. The payment of it constituted complete settlement of all claims then pending or allowable on behalf of the appellant. He accepted it as such without question or appeal to the court for further relief or review of the Secretary's action. Except for the effect of subsequent legislation, therefore, payment of that award would have been the end of this litigation.

However, by an Act approved May 18, 1936, Congress again amended the War Minerals Relief legislation by directing the Secretary to reopen claims in which the District Court previously had decreed interest payments or obligations to be reimbursable losses and to include in his "adjustments and payments of losses, interest which has been paid or has accrued to the date of approval of this Act."[8] Appellant promptly

---

[3] Work v. United States ex rel. Rives, 1925, 267 U.S. 175, 45 S.Ct. 252, 69 L. Ed. 561; Work v. United States ex rel. Chestatee Co., 1925, 267 U.S. 185, 45 S. Ct. 256, 69 L.Ed. 566.

[4] 45 Stat. 1166, c. 182, so far as material here being as follows:

"Be it enacted * * * That any claimant who has heretofore filed with the Secretary of the Interior within the time and manner provided by existing law a claim under said Acts generally known as the War Minerals Acts (Fortieth Statutes, page 1272, and its amendments) may within one year from the date of the passage and approval hereof petition the Supreme Court of the District of Columbia to review the final decision of the Secretary of the Interior upon any question of law which has arisen or which may hereafter arise in the adjustment, liquidation, and payment of his claim under said Acts, but the decision of the Secretary of the Interior on all questions of fact shall be conclusive and not subject to review by any court."

* * *

"Sec. 4. Upon the final disposition of such proceeding, the clerk of the Supreme Court of the District of Columbia shall without delay certify to the Secretary of the Interior the final judgment or decree rendered therein, whereupon the Secretary of the Interior shall proceed with the final adjustment of said claim in accordance with the law as construed by the court in such judgment or decree."

Section 3 conferred appellate jurisdiction upon this court and the Supreme Court.

[5] Appellant's original claim, filed April 28, 1919, was denied in toto December 20, 1920, the Secretary finding appellant had sustained no loss on operations and ruling that the Relief Act did not authorize reimbursement for losses incurred in the purchase of property. February 12, 1930, appellant instituted this suit in the District Court to review this decision of the Secretary in the course of which the consent decree of March 3, 1933, was entered, pursuant to which the award of September 14, 1933, was made and accepted. Cf. text circa note 7 infra. The award included losses on account of interest only to March 2, 1919, cf. Ickes v. United States, 1933, 289 U. S. 510, 53 S.Ct. 700, 77 L.Ed. 1352; but cf. Wilbur v. United States, 1931, 284 U.S. 231, 236, 52 S.Ct. 113, 76 L. Ed. 261, and on account of the purchase of property, cf. Wilbur v. United States, 1931, 284 U.S. 231, 236, 52 S. Ct. 113, 76 L.Ed. 261; Wilbur v. United States, 1933, 288 U.S. 97, 100, 53 S. Ct. 293, 77 L.Ed. 638.

[6] Cf. the preceding note. Interest accruing after March 2, 1919, was not allowable until the amendment of May 18, 1936, was enacted.

[7] Cf. notes 5 and 6 supra.

[8] 49 Stat. 1355. The text of the amendment, as far as material, follows: "Be it enacted * * * That in any claim that has heretofore been filed within the

applied to the Secretary for further relief amounting to $37,731.23 under this amendment. The Secretary, acting through the War Minerals Relief Commission of the Department,[9] reopened appellant's claim and on February 5, 1938, made findings of fact and conclusions of law, the short effect of which was to make an additional award of $16,533.85 on account of interest accrued and paid by appellant subsequently to March 2, 1919, but to deny the remainder of the claim which was for interest accrued, but not paid, within the statutory period. The basis for the denial was that on May 18, 1936, appellant's obligation to pay this interest was barred by the statute of limitations of Virginia and therefore the claimant was not under an enforceable obligation as of that date to pay it. The findings of fact and of law were as follows:

"The Commission finds as a matter of fact that on January 23, 1919, Chas F. Nelson became the sole owner of all the stock of claimant corporation and assumed all outstanding obligations.

"The Commission finds as a matter of fact that on March 2, 1919, claimant had outstanding interest-bearing obligations of $40,002.30, incurred within the stimulation period, bearing interest at 6% per annum.

"The Commission finds as a matter of fact that claimant has paid interest, since March 2, 1919, on the above obligations, in the amount of $16,533.85, and that the accrued interest on the date the last interest payment was made amounted to $32,304.-19, itemized as follows: [Here followed an itemized account.]

"The Commission finds as a matter of fact that $1,584.44 interest was paid by claimant prior to the running of the statute of limitations, and that $14,949.41 was paid June 22, 1934, after the statute had run.

"The Commission holds as a. matter of law that the payment of $14,949.41 by the claimant is an allowable loss although that payment was made after the running of the statute of limitations in Virginia (state of incorporation of claimant company).

"The Commission further holds as a matter of law that the above payment did not remove the bar of the statute of limitations and that the balance of accrued interest is not an allowable loss for the reason that the claimant was not under an enforcible obligation as of May 18, 1936, to pay accrued interest, in that as of that date there was available to the claimant the defense that the Virginia statute of limitations had barred the obligation. The claimant has submitted evidence to show that a judgment was obtained against it in an uncontested proceeding on September 1, 1937, in the Circuit Court of Frederick County, Virginia. Since this judgment was obtained after May 18, 1936, it does not alter or affect the character of the obligation as it existed on May 18, 1936. (Solicitor's Memorandum Nov. 1, 1937.)

"The Commission holds as a matter of law that maximum amount of interest to which claimant is entitled to reimbursement under the authority of the War Minerals Relief Act of March 2, 1919 (40 Stat. 1272) as amended February 13, 1929 (45 Stat. 1166) and May 18, 1936 (49 Stat. 1355) is $16,533.85."

In accordance with these findings payment of $16,533.85 was tendered to appellant "in full and complete discharge of all claims" under the pertinent legislation. Appellant declined to accept the payment so

---

time and in the manner provided by the Act approved March 2, 1919 (40 Stat. 1272), as amended, generally referred to as the 'War Minerals Relief Statutes', in which the Supreme Court of the District of Columbia under the authority conferred upon said court by the Act approved February 13, 1929 (45 Stat. 1166), has adjudged or decreed interest payments or obligations to be losses reimbursable within the meaning of the Act of March 2, 1919 (40 Stat. 1272), as amended, the Secretary of the Interior shall open or reopen such claim and include in his adjustments and payments of losses, interest which has been paid or has accrued to the date of approval of this Act: *Provided, however,* That such losses shall be shown to the satisfaction of the Secretary of the Interior as a matter of fact to be the result of a legal obligation incurred within the statutory period as provided in said Act of· March 2, 1919: *And provided further,* That the sum paid in satisfying said claims shall not exceed in total $1,250,000. It is also provided that all settlements under this Act and pursuant to its provisions shall constitute full and complete discharge of all obligations of the United States accruing under the War Minerals Act and Acts amendatory thereof."

[9] The Secretary formally adopted the Commission's findings of fact and law as his own.

conditioned and on August 3, 1938, applied to the court below for a rule requiring appellee to show cause "why a complete review of the erroneous rulings of law of said Secretary of the Interior should not be allowed pursuant to Decree of March 3, 1933." The application was granted, appellee answered the petition and on December 19, 1938, the court rendered its "final judgment" discharging the rule, and adjudging "that the petitioner takes nothing by this suit, and the respondent goes hence without day and is for nothing held." It is from this judgment the appeal here is taken.

Appellant assumes and contends that the amendment of 1936 extended and made applicable to its provisions the Act of February 13, 1929, authorizing judicial review of the Secretary's decisions as to questions of law; that the court below retained jurisdiction in this cause following the consent decree of March 3, 1933, to reopen the case and review the Secretary's decisions as to matters of law under the amendment of 1936; and that his decision and that of the court concerning the effects of the statute of limitations and the Virginia judgment of September 1, 1937, were erroneous. On the other hand, appellee says that his decisions under the amendment of 1936 are not reviewable judicially, either as to law or as to fact; that if they are, they cannot be reviewed in this proceeding; and, finally, that his determination concerning the substantive issues was right. It does not appear from the record whether the court's judgment sustaining the Secretary's action was taken for the reason that it considered that action not reviewable judicially; or not so reviewable in this cause; or right as a matter of substantive law.

In the view we take of the case we need not determine whether the consent decree of 1933 terminated the litigation for all purposes except enforcement of that decree as made, or, therefore, whether the subsequent satisfaction of that decree and its acceptance by the appellant without more exhausted the jurisdiction of the court in the cause; nor need we determine whether the amendment of 1936 created an entirely new cause of action, with resulting questions concerning the propriety of amending the original claim in this suit to include it, whether before or after the consent decree. We think the Secretary is right in his contention that

his decisions under the amendment of 1936 are not reviewable by the courts.

Whether they are reviewable judicially depends upon the construction which should be given to that amendment and to the Act of February 13, 1929, creating the right of judicial review for claimants' benefit. The necessary effect of the 1929 statute was to repeal the previously existing prohibition upon judicial review *to the extent that this prohibition was inconsistent with its terms.* The qualification is important, for the Act of 1929 was strictly limited in the extent to which it directed and permitted the courts to review the Secretary's determinations. It did not open up the entire field for judicial examination. The prohibition was general and all-inclusive so far as appeals by claimants were concerned. [10] The amending act was strictly limited, as to claimants allowed the right of review, the time within which it might be asserted and the questions reviewable. Only persons who had asserted their rights before the Secretary within the narrow limitations of time and manner prescribed by the original act and its amendments were accorded the privilege. It was limited to questions of law involved in the Secretary's final decisions in the adjustment, liquidation and settlement of claims so presented. The forum was restricted to a single court, with appropriate provision for appellate review of its action. Upon final disposition of the cause, execution in favor of the claimant was not authorized, but the Clerk of the District Court was required to certify the final judgment or decree to the Secretary, who was directed to proceed with the final adjustment of the claim in accordance with the law as construed by the court. The most important limitation, for present purposes, was that which required the petition for review to be filed "within one year from the date of the passage and approval hereof." In the light of this provision, the language authorizing review upon "any question of law *which has arisen or which may hereafter arise,*" must be construed to mean questions which had arisen prior to February 13, 1929, or should arise in proceedings in which a petition for review must have been filed with the court within one year from that date. The clause "or which may hereafter arise" cannot be construed as nullifying the requirement that

---

[10] Work v. United States ex rel. Rives, 1925, 267 U.S. 175, 45 S.Ct. 252, 69 L. Ed. 561. The original act permitted judicial review in defined circumstances at the instance of the Government.

the petition be filed within one year from approval of the Act. The statute, therefore, was both a grant and a limitation of judicial power. The jurisdiction was conferred upon the specified courts, but it was limited strictly by express terms of the statute in the time and the manner of its exertion. The Act was not a general creation of judicial authority nor can it be construed as if that were its purpose. A statute so guarded in its extension of power and of right must be construed strictly in the light of its terms and purpose. It cannot be extended by doubtful implication to include situations not within its letter and obvious end.

■ This view is supported by the history of the legislation. Congress permitted nine years to elapse from passage of the original act before conferring the narrow right and power of review. That this was intentional appears from the fact that during that interval strict constructions of the Act by the Secretary were cured, not by the obvious and easily available remedy of authorizing judicial review, but by substantive amendments.[11] The design was clear to retain control in Congress and the Executive, not to give it to the courts. Such an intention was entirely consistent with the nature of the claims for which payment was provided in the legislation. These were not matters of common right or even of governmental contract. They were in the nature of equitable gratuities, made in recognition of a supposed moral obligation, not a legal one, and surrounded with safeguards intended to prevent their crystallization into "vested rights" and perversion to purposes of profiting or speculating at the expense of the government.[12] The claims did not lose that character when the attenuated right of judicial review was conferred, and even more clearly they did not shed it beyond the limits of that right. The Act of February 13, 1929, therefore, by its own force can have no application to the claims here in question, since they did not arise until more than six years after the time provided by it for the filing of petitions for review, and therefore could not possibly have been within the class of claims made reviewable. Although the statute provides for the review of questions of law "which may hereafter arise," it contains no express provision or basis for implication that such questions might arise under subsequent amendments occurring more than one year after the Act's approval. On the contrary, review was limited explicitly to such questions arising in connection with claims based on the original act and then existing amendments as to which a petition for review should be filed within the specified year.

■ Nor, in our judgment, does the amendment of 1936 purport to incorporate within itself the Act of February 13, 1929, or make its terms applicable to the claims created by it. The amendment is directed to the Secretary and exclusively to him. There is no mandate to the courts. The Secretary is to "open or reopen" the specified claims. He is to include the additional interest losses "in *his* adjustments." (Italics supplied) These losses must be shown *"to the satisfaction of the Secretary * * * as a matter of fact* to be the result of a legal obligation incurred within the statutory period * * *."* (Italics supplied) The aggregate amount to be expended to satisfy the claims is limited to $1,250,000. The claims to which the relief is attached are those in which the court already had adjudged interest payments or obligations to be reimbursable losses, in other words, claims as to which the court had concluded its functions and as to which, generally speaking at any rate, further judicial action would not be required. The legislation was designed to fit claims where nothing remained to be done except to make the mathematical calculations necessary to bring the interest items down from 1919 to 1936.[13] There was therefore no reason in the general situation with which Congress

---

11 Cf. Note 2 supra.

12 Work v. United States ex rel. Rives, 1925, 267 U.S. 175, 181, 182, 45 S.Ct. 252, 254, 69 L.Ed. 561. "It was a gratuity based on equitable and moral considerations. * * * Congress did not wish to create a legal claim. It was not dealing with vested rights. * * * It hedged the granting of the equitable gratuity with limitations to prevent the use of the statute for the recovery of doubtful or fraudulent claims or merely speculative losses."

13 It was frequently stated in the committee reports on the bill and in the debate on the floor of the House that the measure was designed to bring about speedy and final settlement of the claims for interest by means of routine computations by the Secretary of the Interior; e. g., "There is nothing in this bill that will take away any of the prerogatives of

was dealing for reviving the rigidly limited provision for judicial review. The amendment gives evidence in all these respects that Congress intended to and did in fact return to the pattern of legislation prevailing in respect to these claims prior to 1929. This conclusion likewise is supported, perhaps even more strongly, by the significant absence of specific language preserving the right and power of judicial review or adapting the terms of the Act of 1929 to the purpose of reviewing them. With that Act specifically in mind, as shown on the face of the amendment itself, Congress made no new direction to the courts, prescribed no new time within which petitions should be filed in court, gave no indication that it intended the provisions of the 1929 statute to be incorporated into the amendment, in short omitted all provision for making the Act applicable to the newly created claims. The amendment's reference to the District

Court's adjudication of reimbursable interest losses was solely by way of identification and definition of the claims which the Secretary should reopen for the purpose of including additional interest. It is a basis too slender to support an implication that Congress intended it as an incorporation and adaptation of the Act of 1929 to the purposes of the amendment. Appellant's interpretation would impose upon the courts the necessity of supplying entirely a new statutory period for the filing of petitions. We are unwilling to assume such a burden of legislation. Both the purpose and the letter of the amendment, its functions and omissions, declare that the Secretary's determination is final.

This makes it unnecessary to consider whether the appellee's decision was right on the substantive issue and other questions which were presented.

The judgment is affirmed.

the Secretary of the Interior to liquidate and finally settle these claims." And the determination of the amounts due is "absolutely in his discretion." (Representative Vinson of Georgia, 80 Cong.Rec. 6401) Congressman Ramspeck, principal sponsor of the bill on the floor, said,

"there is no appeal from the Secretary of the Interior as to what amount shall be paid." 80 Cong.Rec. 6399. See also the committee reports: Senate Rep. 249, 74th Cong., 1st Sess.; House Rep. 2002, 74th Cong., 2d Sess.