**NOLDE & HORST CO. v. HELVERING,**
Com'r of Internal Revenue.

No. 7631.

United States Court of Appeals for the
District of Columbia.

Decided June 30, 1941.

Andrew B. Trudgian, of New York City,
and Thomas M. Wilkins, of Washington,
D. C., for appellant.

Edward M. Curran, U. S. Atty., and John
L. Laskey, Asst. U. S. Atty., both of
Washington, D. C., for appellee.

Before MILLER, VINSON, and RUT-
LEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from the District Court's
dismissal of appellant's complaint by which
it sought relief in the nature of mandamus
against the appellee.

The Revenue Act of 1936 (Section 602) [1]
authorizes payments to be made to holders
of floor stocks as of January 6, 1936, con-
sisting of articles processed wholly or in
chief value from commodities subject to
processing tax under the Agricultural Ad-
justment Act, 7 U.S.C.A. § 601 et seq.
Appellant filed its claim for payments in ac-

---

[1] 7 U.S.C. § 642, 49 Stat. 1740 (1936).

cordance with regulations of the Commissioner of Internal Revenue promulgated pursuant to the statute's direction.[2] Thereafter informal conferences were held with subordinates of the Commissioner, in accordance with customary procedure, at which proofs were submitted to establish the claim. Eventually it was denied, final action being taken in the Commissioner's name by one of his deputies. Appellant then filed its suit asking for an order directing the Commissioner: (1) Personally to pass upon the claim; (2) to promulgate rules of proof and of open and regular procedure to be followed in proving claims under the Act. The court sustained appellee's motion to dismiss the action, holding that the Deputy Commissioner was authorized to act for the Commissioner and that the court was without jurisdiction to review the determination. The opinion and order of the court, as shown by the record, disclose no specific reference to promulgation of rules of proof and procedure, but the dismissal must be taken to determine that appellant was not entitled to relief in these respects.

Appellant's fundamental thesis is that the Commissioner's functions with reference to claims filed under the Act are judicial in nature. Hence, it says, he cannot delegate, but must perform them personally [3] and must "provide rules of proof and promulgate rules of orderly and open procedure." Appellant admits, ostensibly, that the Commissioner's determination cannot be reviewed by the courts. But it asserts, in effect, that he has declined to perform his functions and that the court has power to order him to do so, [4] and, it seems, also to direct that he do so in a judicial or quasi-judicial manner.

The Commissioner, on the contrary, says that his functions are exclusively executive; that the claim is for a payment in the nature of a gratuity and therefore entirely under the control of Congress, which has given exclusive jurisdiction to the Commissioner and prohibited review of his de-termination by the courts. He says also that he has power to delegate his duties to his deputies, that he has done so, and that there is no legal requirement for promulgation of rules such as appellant seeks. We think the Commissioner's position is right and the judgment must be affirmed.

Appellant's argument, appears in the guise of well-accepted principles. It assumes, in the first place, that the Commissioner has not performed his functions in accordance with the statutory mandate, and therefore that the court has power to order him to perform them. Actually it asks us to direct him concerning the manner in which his duties shall be discharged. [5] But basically the argument cuts more deeply and challenges the validity of Section 602 unless the relief sought is granted. By characterizing the Commissioner's functions as "judicial," appellant asserts, in effect, that its claim is entitled to protections characteristic of a strictly judicial process and seeks to engraft them upon the Commissioner's action, although to require them would be entirely inconsistent with the statute's terms and purposes. The fundamental fallacy is in misconceiving the substantive nature of the claim. From this flows the error concerning the procedural protections to which its assertion is entitled. Because this fallacy lies at the bottom of the case, we give first attention to it.

The payments which appellant seeks to have made are payable from the public funds. This fact alone would require Congressional appropriation and waiver of immunity to suit for their enforcement. Whether or to what extent strictly judicial procedures may be dispensed with in the enforcement of claims having a definite legal character, except for these impediments and assuming their removal, need not be considered. The claims in question do not have that quality. The payments are not in discharge of a contractual obligation of the Government or in the nature of reparation for injuries which would be tortious, if inflicted by a private

---

[2] 7 U.S.C. § 642 (d). The regulations are reported in T.D. 4672, 33 T.D.I.R.; also in XV-2 Cum. Bull. 428.

[3] In accordance with the well-established rule that a judge cannot delegate his authority to another. Cf. 33 C.J. 961 § 84 D.

[4] Cf. Roberts v. United States ex rel. Valentine, 1900, 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443; Interstate Commerce Commission v. United States ex rel.

Humboldt S. S. Co., 1912, 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849; United States ex rel. Louisville Cement Co. v. Interstate Commerce Commission, 1918, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914; Cotonificio Bustese v. Morgenthau, —— App.D.C. ——, 121 F.2d 884, decided April 28, 1941.

[5] More especially as respects the promulgation of rules of proof and procedure.

person, or of compensation for property taken for public use. Nor is the claim one for refund of money paid, as a tax, into the Treasury, since the statute expressly prohibits payments to persons who have paid or are liable to pay the processing tax.[6]

The purpose of the payments was to remedy inequities arising from the failure of the Secretary of Agriculture to terminate the processing taxes by proclamation in the manner provided by the Agricultural Adjustment Act. The amount had been included in the purchase price of the goods which appellant had bought, and there was therefore no legal obligation upon Congress to make it whole. But the inequity of the situation created by appellant's own contracts appealed to the Congressional sense of justice, with the result that Section 602 was enacted "as a matter of fair dealing and sound public policy," not as relief "required by law."[7] The payments therefore were in the nature of gratuities, similar to those provided for under Section 5 of the Dent Act.[8] Here, as there, Congress "was not dealing with vested rights" and "was occupying toward the proposed beneficiaries * * * the attitude rather of a benefactor, than of a debtor at law."[9] Here, as there, the procedural consequence flowing from the gratuitous character of the payments is that Congress had full power to vest final and exclusive jurisdiction over the claims in an executive official or agency, and to withhold entirely from the courts power to interfere with his or its action.

We think the terms of Section 602 and its legislative history show clearly that Congress has done this. Section 602 (d) requires that the claimant establish the facts on which his claim is based "to the satisfaction of the Commissioner," and Section 602(i) provides that his decision "shall be final and no court shall have jurisdiction to review such determination." These are substantially the provisions made in Section 5 of the Dent Act,[10] which, taken in connection with the gratuitous nature of the substantive claim, formed the basis for the decision in Work v. United States ex rel. Rives, 1925, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561. It follows that the courts are as much without power to interfere with or control the Commissioner's action in respect to these claims, as they were with reference to claims for payments authorized by the Dent Act.

This conclusion is supported further by the provisions of Section 602 relating to administrative review and to procedure for establishing the claims, as well as by the legislative history of the statute. The finality which was intended to characterize the Commissioner's action is shown by Section 602(h), which prohibits review of his decisions "by any other administrative or accounting officer, employee, or agent of the United States," except for fraud or mathematical [mis] calculation.[11] Appellant says that the narrow scope of administrative supervision makes judicial review all the more imperative, to the extent at least to which it seeks relief in this action. The more tenable conclusion is that Congress intended the Commissioner's power and action to be final, not only as to the courts, but also as to his executive superiors, except in the respects specified. Furthermore, by Section 602 (d) the Commissioner, acting with the Secretary's approval, was given power to prescribe the procedure for making and establishing claims commensurate with the

---

[6] These were excluded because their rights to refund were governed by Section 21 (d) of the Agricultural Adjustment Act, as amended, 49 Stat. 772 (1935), repealed, 49 Stat. 1747 (1936) 7 U.S.C.A. § 623. H.R.Rep. No. 2475, 74th Cong., 2d Sess. (1935) 15.

[7] H.R.Rep. No. 2475, 74th Cong., 2d Sess. (1935) 15–16; Sen.Rep. No. 2156, 74th Cong., 2d Sess. (1936) 29.

[8] War Minerals Relief Act, of March 2, 1919, 40 Stat. 1272, 50 U.S.C.A. § 80 note.

[9] Work v. United States ex rel. Rives, 1925, 267 U.S. 175, 181, 182, 45 S.Ct. 252, 254, 69 L.Ed. 561; cf. Nelson v. Ickes, 1940, 72 App.D.C. 217, 113 F.2d 515.

[10] The section required that the facts essential to establish the claim appear "to the satisfaction of the said Secretary" and declared: "That nothing in this section shall be construed to confer jurisdiction upon any court to entertain a suit against the United States."

[11] The report of the Committee of the House of Representatives, cited supra note 7, states: "Section 602 (h) is similar to the provisions of existing law relating to internal-revenue taxes which limit administrative review of the findings of fact and the decision of the Commissioner of Internal Revenue upon the merits of claims adjusted pursuant to this section to cases of fraud or mistake in mathematical calculation."

jurisdiction conferred upon him to determine them.[12] Section 602 (b) specifically authorizees the submission of claims by affidavit setting forth essential facts in lieu of detailed schedules "of articles, purchases, sale prices, and sales," and the regulations have prescribed this procedure. The report of the Committee of the Senate shows that the purpose of Congress in empowering the Commissioner to base his action on claimants' affidavits was "to simplify the requirements of proof of claims filed under the section and to enable the Commissioner to make as speedy disposition of such claims as proper protection of the interests of the Government will permit."[13] The report of the House Committee specifically states that Section 602 (i), which makes the Commissioner's decision final and prohibits judicial review, was adopted for "considerations of administrative convenience and economy and the prevention of unnecessary litigation."[14]

■ What has been said is sufficient to dispose of the case. But we think it is clear that there is no merit in appellant's contention that the Commissioner was required to act in person in the decision of these claims. Provision has been made by statute[15] for the employment of deputy commissioners and the Commissioner has been "authorized to assign to deputy commissioners such duties as he may prescribe."[16] The authority is general, and there is nothing in Section 602 which indicates that the power there given to the Commissioner to determine claims shall not be included within his general authority to delegate functions to his deputies. This view is supported also by the administrative character of the determination and by the fact that, in view of the volume of these claims, any other would impose upon the Commissioner a burden which it is unreasonable to suppose that Congress intended him to bear.[17]

■ It follows, too, from what has been said that we are without power to require the Commissioner to promulgate "rules of proof" and "rules of open and regular procedure," as appellant asks. With the Secretary's approval, and we think in full accordance with the statute's requirements, he has promulgated regulations for filing and establishing claims. What appellant actually seeks is to have us require him to promulgate rules which are different from those he has prescribed. We have no power to supervise the exercise of his functions in this manner.

The judgment is affirmed.

---

[12] The language of the provision is: "No payment shall be made under this section unless the claimant files a claim therefor prior to January 1, 1937, in conformity with regulations prescribed by the Commissioner with the approval of the Secretary, nor unless he establishes to the satisfaction of the Commissioner the facts on which such claim is based."

The time for filing claims was extended to January 1, 1940, by amendment. 7 U.S.C.A. § 642 (d).

[13] Sen.Rep. No. 2156, 74th Cong., 2d Sess. (1936) 29–30. The provision for submission on affidavit was added by amendment of the House Bill in the Senate.

[14] H.R.Rep. No. 2475, 74th Cong., 2d Sess. (1935) 16.

[15] 26 U.S.C.A.Int.Rev.Code, § 3915, 40 Stat. 1140 (1919), § 1301(a).

[16] 26 U.S.C.A.Int.Rev.Code, § 3916(a), 40 Stat. 348 (1917), § 1.

[17] The Commissioner's annual report for the fiscal year ending June 30, 1937, shows that 39,423 claims under Section 602 were received. The report for the fiscal year ending June 30, 1938, shows that 2,513 claims were received and 1,255 claims were reopened. The report for the fiscal year ending June 30, 1939, shows that 225 such claims were received and 935 were reopened.